**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JOSEPH GIBSON and RUSSEL
SCHULTZ,

*Plaintiffs-Appellants*,

v.

CITY OF PORTLAND;
MULTNOMAH COUNTY;
MULTNOMAH COUNTY
DISTRICT ATTORNEY'S OFFICE;
CHRISTOPHER TRAYNOR; ROD
UNDERHILL; MIKE SCHMIDT;
BRAD KALBAUGH; and SEAN
HUGHEY,

*Defendants-Appellees*.

No. 24-1663

D.C. No. 3:23-
cv-00833-HZ

OPINION

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted April 1, 2025
Portland, Oregon

Filed January 29, 2026

Before:  Jay S. Bybee, Kenneth K. Lee, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Bybee;
Partial Concurrence and Partial Dissent by Judge Forrest

## SUMMARY[*]

### Shotgun Pleading / Immunity

The panel affirmed in part and reversed in part the district court's dismissal of an action alleging that Defendants-Appellees—Multnomah County, the City of Portland, the Multnomah County District Attorney's Office (MCDA), two former district attorneys, two deputy district attorneys, and a Portland police detective—conspired to arrest and prosecute Plaintiffs without probable cause to silence their disfavored right-wing political expression.

The panel held that Plaintiffs' complaint—which set forth detailed facts but, in its causes of action, merely alleged the "defendants" deprived them of various constitutional and statutory rights—failed to satisfy Federal Rule of Civil Procedure 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." The panel made clear that district courts do not have to accept shotgun pleadings. Here, among other things, the claims contained multiple counts, were conclusory and vague, and asserted multiple claims against multiple

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendants without identifying who did what. The panel agreed with the district court that the complaint was inadequate, and held that the district court properly dismissed the complaint as a shotgun pleading.

Because the district court reached other issues in the alternative, and in the interest of justice, the panel reached Defendants' claims as to their immunity from suit. The panel affirmed the district court's dismissal with prejudice of all claims against MCDA and the prosecutor Defendants in their official capacities on the basis of sovereign immunity. The panel held that, on balance, it was persuaded that MCDA is a state office, and district attorneys and deputy district attorneys are state officers, as the Oregon courts have concluded. The prosecutor Defendants were therefore state actors shielded by the Eleventh Amendment and could not be sued in their official capacity for money damages.

The panel affirmed the district court's dismissal with prejudice of all claims against District Attorneys Underhill and Schmidt and Deputy District Attorneys Hughey and Kalbaugh in their individual capacities on the basis of absolute prosecutorial immunity to the extent they were involved in prosecutorial activities. Regardless of the prosecutors' motives for charging Plaintiffs, the District Attorney Defendants were entitled to absolute immunity for their charging decisions, which are intimately associated with the judicial phase of the criminal process.

The panel reversed the district court's dismissal of the claims against Deputy District Attorney Kalbaugh to the extent the claims alleged he knowingly presented false testimony to obtain an arrest warrant. Filing a probable cause affidavit is not a prosecutorial function warranting absolute immunity. Kalbaugh was not protected by

qualified immunity because a state actor who presents knowingly false testimony in support of a probable cause determination for an arrest warrant, where the warrant would not have issued without the false statements, violates the Fourth Amendment, and the act's unlawfulness was apparent.

The panel reversed the district court's dismissal with prejudice of Plaintiffs' state law claims against Multnomah County. On remand, Plaintiffs should be permitted to replead their claims against Multnomah County, but only to the extent that they are not based on the acts or omissions of MCDA or the prosecutor Defendants.

The panel held that Portland Police Detective Traynor was absolutely immune from liability for any claim arising from his grand jury testimony.

Accordingly, the panel affirmed in part and reversed in part the district court's judgment and remanded with instructions to permit Plaintiffs to amend their complaint to conform to Rule 8.

Concurring in part and dissenting in part, Judge Forrest wrote that the majority erred in *sua sponte* adopting the "shotgun pleading" rule. She agreed with the majority on the following points: (1) the MCDA and the Prosecutor Defendants have immunity except as related to the allegations that Deputy District Attorney Brad Kalbaugh filed a false affidavit when he applied for an arrest warrant; (2) the claims asserted against Multnomah County, which were all based on the immune acts of the Prosecutor Defendants, necessarily failed; and (3) Detective Traynor has immunity in relation to his grand-jury testimony. But because the majority remanded several of Plaintiffs' claims for repleading under its new shotgun-pleading rule, it did not

address other arguments that Defendants raised in seeking dismissal of Plaintiffs' complaint. Judge Forrest would reach those additional issues.

## COUNSEL

James L. Buchal (argued), Murphy & Buchal LLP, Portland, Oregon; D. Angus Lee, Angus Lee Law Firm PLLC, Vancouver, Washington; for Plaintiffs-Appellants.

Denis M. Vannier (argued), Senior Deputy City Attorney; Naomi Sheffield, Counsel; Portland Office of the City Attorney, Portland, Oregon; Kate E. Morrow (argued), Assistant Attorney General; Robert A. Koch, Senior Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Oregon Attorney General; Oregon Department of Justice, Salem, Oregon; B. Andrew Jones (argued), Deputy County Attorney; Christopher A. Gilmore, Assistant County Attorney; Multnomah County Attorney's Office, Portland, Oregon; for Defendants-Appellees.

**OPINION**

BYBEE, Circuit Judge:

Plaintiffs-Appellants, Joseph Gibson and Russell Schultz, appeal the district court's dismissal of their complaint for damages for alleged violations of their civil rights under 42 U.S.C. §§ 1983, 1985, and 1986, and Oregon tort law. They allege that Defendants-Appellees— Multnomah County, the City of Portland, the Multnomah County District Attorney's Office (MCDA), two former district attorneys, two deputy district attorneys, and a Portland police detective—conspired to arrest and prosecute them without probable cause to silence their disfavored right-wing political expression. The district court dismissed Plaintiffs' claims—with prejudice against some Defendants—on procedural and, alternatively, substantive grounds.

This case presents complex questions of fact and law. Those questions are made all the more complicated by Plaintiffs' shotgun pleading. Although the complaint set forth detailed facts in 252 numbered paragraphs, in its causes of action, the complaint merely alleged the "defendants" deprived them of various constitutional and statutory rights, leaving to Defendants, the district court, and us to decipher the details. The complaint fails to satisfy Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." We thus agree with the district court that the complaint was inadequate. The district court reached other issues in the alternative, and in the interest of justice, we reach claims by Defendants only as to their immunity from suit. With respect to these grounds, we affirm in part and reverse in part the judgment

of the district court and remand with instructions to permit Plaintiffs to amend their complaint to conform to Rule 8, especially given the substantial legal issues and troubling factual allegations raised by Plaintiffs.

## I. FACTS AND PROCEEDINGS

The district court dismissed Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). As such, "[w]e accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citing *Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1031–32 (9th Cir. 2008)). Our recitation represents Plaintiffs' side of the case. Because "we remand this case to the district court, both sides will have an opportunity to prove or contest the 'facts' alleged in the complaint and set forth in this opinion." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 907 (9th Cir. 2012) (en banc).

## A. *The Facts as Alleged*

According to the complaint, Gibson is the founder of a political organization called "Patriot Prayer" that, as relevant here, organized right-wing demonstrations in Portland, Oregon. Schultz was a member of Patriot Prayer and attended its demonstrations. Patriot Prayer's primary target was Antifa, a left-wing organization "violently opposed to the values promoted by [Plaintiffs]." Plaintiffs allege that the governments of the City of Portland and Multnomah County, Oregon, sympathized with left-wing activists, especially Antifa, but were hostile to right-wing entities like Patriot Prayer. The then-Mayor of Portland, Ted Wheeler, who was also the commissioner of the Portland Police Bureau by virtue of his office, shared these prejudices.

Portland's bias against Plaintiffs ultimately manifested in a conspiracy to silence them.

In May 2017, Gibson received a federal permit to hold a political demonstration on federal property in downtown Portland on June 4, 2017.  At the end of May, Wheeler made a public statement that the City did not want any "alt right events" and encouraged the federal government to rescind the permit.  Wheeler added that Gibson displayed "bigotry and hatred."  The federal government rejected the City's entreaty, and the demonstration occurred with persistent violent attempts by Antifa to disrupt it.  Despite the violence, Portland police made few, if any, arrests of Antifa activists.

In February 2019, Portland's City Council passed a resolution condemning "a rise of white nationalist, white supremacist and alt-right hate groups, many of which have been emboldened by the words and actions of the current presidential administration," adding that "the City of Portland will not tolerate hate in any form."  Gibson claimed that this resolution was aimed at him and Patriot Prayer. Gibson, however, denied that Patriot Prayer was motivated by "bigotry and hatred" and said that the group merely supports "patriotism, the Christian religion, and advocacy for limited government."  The same month, Wheeler implemented training for police officers to identify white supremacy, and, in an interview, decried Gibson as the "leader of a group that perpetuates hate speech and violence."

On May 1, 2019, Patriot Prayer appeared outside the Cider Riot bar, Antifa's unofficial headquarters, and a confrontation ensued.  According to the complaint, Gibson and Schultz harmed no one and damaged no property, while Antifa assaulted Patriot Prayer protesters.    Plaintiffs

discouraged violence despite Antifa's aggression. Portland police took no action to stop the fracas.

Portland police assigned Detective Christopher Traynor to investigate the incident. From the outset, Traynor never investigated violence by Antifa despite possessing footage showing an Antifa activist kicking and spitting on Gibson. Instead, Defendants conspired to focus investigative efforts on Patriot Prayer's role in the incident.

In July 2019, Defendants learned of a planned right-wing event to be held in Portland on August 17 that would call on the government to label Antifa a domestic terror organization. Local government officials swiftly began colluding to undermine the event. These meetings, which included Wheeler and the district attorney's office, sparked a plan to arrest Plaintiffs to prevent them from joining the protest.

Brad Kalbaugh, a deputy prosecutor with MCDA, charged Plaintiffs on August 12, 2019, with the crime of riot in connection with the May 1 confrontation at the Cedar Riot bar.[1] Kalbaugh pursued these charges despite viewing footage showing that Plaintiffs had not engaged in violence, trespass, or threats. To charge Plaintiffs, Kalbaugh executed two probable cause affidavits in which he swore: "Detective Traynor clearly observed . . . individuals [including Gibson and Schultz] taunting and physically threatening members of the Antifa group in an effort clearly designed to provoke a physical altercation"; "Video observed by Detective Traynor shows Gibson repeatedly challenging members of the Antifa

---

[1] Under Oregon law, "[a] person commits the crime of riot if while participating with five or more other persons the person engages in tumultuous and violent conduct and thereby intentionally or recklessly creates a grave risk of causing public alarm." Or. Rev. Stat. § 166.015.

group to fight him as he says 'do something' and taunts them from a sidewalk"; and "Video observed by Detective Traynor shows Gibson physically pushing Heather Clark, the woman who eventually was knocked unconscious by [another member of Patriot Prayer]." According to Plaintiffs, Kalbaugh allegedly knew his statements were false, and he knew he could not charge Plaintiffs without them.

On August 15, Kalbaugh presented the case against Gibson and Schultz to a grand jury where Traynor was the state's primary witness. Traynor falsely testified that he had "no doubt whatsoever" that Plaintiffs engaged in "violent and tumultuous" acts. And despite possessing complete footage of the incident, Kalbaugh presented misleading excerpts. The grand jury indicted Plaintiffs, and Defendants arrested Gibson and Schultz prior to the August 17 protest. Wheeler later bragged that the charges against Plaintiffs "had a chilling effect" on the event.

While the charges were pending, Mike Schmidt was elected Multnomah County District Attorney, replacing defendant Rod Underhill. Schmidt promptly changed prosecutorial policy related to the crime of riot. Starting August 11, 2020, MCDA presumptively declined to prosecute riot cases unless the riotous conduct was accompanied by allegations of more serious crimes. MCDA applied the policy retroactively to all pending cases except for that of Plaintiffs.

In September 2020, Gibson and Schultz filed a civil action in the United States District Court for the District of Oregon to enjoin Oregon's prosecution of them. In an order denying Plaintiffs' motion for injunctive relief, United States District Judge Karin J. Immergut wrote that "Plaintiffs make

compelling arguments that their conduct does not rise to the level of 'tumultuous and violent' conduct under O.R.S. 166.015." *Gibson v. Schmidt*, 522 F. Supp. 3d 804, 818 (D. Or. 2021). Judge Immergut added that "Defendants failed to provide any justification for the non-prosecution policy or explain why it was not evidence of Defendants' bias against Plaintiffs." *Id.* at 820. Nevertheless, the district court dismissed the case based on *Younger* abstention. *Id.* at 822 (citing *Younger v. Harris*, 401 U.S. 37, 46 (1971)).

Plaintiffs then moved to dismiss the criminal proceedings in state court, but the trial court denied relief because Kalbaugh explained that the non-prosecution policy was not applied retroactively to other cases. Denying the motion, the state court expressed concern about the sufficiency of the evidence against Gibson and Schultz. The case proceeded to trial. When the government concluded its case in chief, the trial court directed a judgment of acquittal.

B. *The Proceedings*

Following their acquittal on the riot charges, Plaintiffs brought this action in the District of Oregon. In their amended complaint, they brought four claims against the governmental and individual defendants: (1) violation of § 1983 based on deprivation of their rights to speech and assembly, fair judicial proceedings, right to travel, equal protection, and liberty and property by reason of defamation; (2) violation of § 1985 for conspiracy to deprive Plaintiffs of their constitutional rights; (3) violation of § 1986; and (4) commission of the state torts of malicious prosecution, false arrest and imprisonment, and negligence. Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

In a lengthy opinion, the district court dismissed Plaintiffs' action with prejudice as to certain claims that it believed were immunity-barred and without prejudice as to others, and it entered judgment in favor of Defendants. The district court first addressed whether the complaint satisfied Rule 8(a)(2). It concluded that despite Plaintiffs' "46-page FAC," "Plaintiffs plead multiple claims and do not identify which specific facts are allocated to which claim and, as such, they fail to satisfy Rule 8(a)(2)." Notwithstanding that conclusion, the district court addressed Defendants' additional challenges to the complaint based on various defenses of immunity and failure to state a claim and concluded that Defendants would also be entitled to judgment on those bases. Plaintiffs timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291, and we review de novo a district court's dismissal of a complaint for failure to state a claim. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "We construe all factual allegations in the light most favorable to the plaintiffs. Dismissal . . . is appropriate when the complaint fails to state sufficient facts creating a plausible claim to relief." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021) (citations omitted).

## III. DISCUSSION

The district court held for Defendants on three different bases. First, it held that Plaintiffs' complaint was inadequately plead under Rule 8 and must be dismissed. Second, it held that MCDA, District Attorneys Underhill and Schmidt, Deputy District Attorneys Hughey and Kalbaugh, Multnomah County, and Detective Traynor were entitled to some kind of immunity. Third, it held that Plaintiffs' remaining claims failed to state claims upon which relief could be granted. For the reasons we explain below, we will reach only the first two of these grounds. We will begin with the immunity claims and then discuss the Rule 8 deficiencies in the complaint.

### A. *Immunities from Suit*

Governmental parties to a suit may claim not only immunity from *liability*, but immunity from *the suit itself*. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Governmental immunity is not concerned only with the burden of litigation on the public fisc, but also with "the general costs of subjecting officials to the risks of trial," including "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982); *see Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1027 (9th Cir. 2023) (en banc). Because governmental immunities are immunities from suit, and are "conceptually distinct from the merits of the plaintiff's claim," *Mitchell*, 472 U.S. at 527, immunity questions should be resolved "at the earliest possible stage in litigation" and "long before trial," *Hunter v. Bryant*, 502 U.S. 224, 227, 228 (1991) (per curiam). *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (stating that any discovery required to resolve

questions of qualified immunity "should be tailored specifically to th[at] question").

Several of the Defendants in this action have asserted absolute, qualified, or sovereign immunity. Each of these is a defense to suit. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (state sovereign immunity is immunity from liability and suit); *Mitchell*, 472 U.S. at 526 (same for absolute and qualified immunity). To delay deciding these issues would dilute the protections from suit afforded by these immunities, so before considering any other issues in this appeal, we consider the following claims to immunity: (1) MCDA's claim to sovereign immunity under the Eleventh Amendment; (2) District Attorneys Underhill and Schmidt's (the "District Attorney Defendants") claim to absolute immunity for any liability arising out of their prosecutorial decisions; (3) Deputy District Attorneys Hughey and Kalbaugh's claim to absolute or qualified immunity; (4) Multnomah County's claim to immunity under Oregon law; and (5) Detective Traynor's claim to absolute witness immunity.

### 1. Multnomah County District Attorney's Office

Plaintiffs sued MCDA, District Attorneys Underhill and Schmidt in their individual and official capacities, and Deputy District Attorneys Hughey and Kalbaugh in their individual and official capacities. Individual capacity civil rights lawsuits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Meanwhile, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Suits against state officials in their official capacity

therefore should be treated as suits against the State." *Id.* (citing *Graham*, 473 U.S. at 165–66) (citations omitted). This subsection concerns only Plaintiffs' lawsuit against MCDA and the prosecutor Defendants in their official capacities; Plaintiffs' suit against the prosecutor Defendants in their individual capacities will be addressed in the next two subsections. Because the suit against the prosecutor Defendants in their official capacities effectively is a suit against MCDA, for convenience we will generally refer to these parties as MCDA.

Plaintiffs assert that the district court erred by finding that MCDA was entitled to sovereign immunity under the Eleventh Amendment. We disagree and affirm the dismissal of all claims against MCDA and Defendants Underhill, Schmidt, Hughey, and Kalbaugh in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment, absent certain exceptions not applicable here, to prohibit suits by individuals against states. *See generally Hans v. Louisiana*, 134 U.S. 1 (1890) (holding that the Eleventh Amendment prohibits suits by citizens against their own states as well as other states). The question in this case is whether MCDA is a state entity or, as its name suggests, an arm of the county. If the office is a county entity, it may not interpose the Eleventh Amendment as a defense to suit. *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006). Whether the office is "more like a county or city than it is like an arm of the State" turns on "the nature of the

entity created by state law." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

We recently clarified our approach to Eleventh Amendment questions in our en banc decision in *Kohn v. State Bar of California*. 87 F.4th at 1031.[2] In that case, we held that questions of sovereign immunity must be answered at the entity level rather than the activity level. *Id.* We recognized that in an activity-based approach, "an entity's immunity from suit may vary depending on the function it performs." *Id.* at 1029. By contrast, an entity-based approach requires an up-down determination of whether the entity predominantly exercises state authority: "an entity either is or is not an arm of the [s]tate," and "[t]he status of an entity does not change from one case to the next based on the nature of the suit, the [s]tate's financial responsibility in one case as compared to another, or other variable factors." *Id.* at 1031 (alterations in original) (quoting *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008)). We adopted a three-part inquiry into (1) how state law characterizes or treats the entity, (2) how the members of the entity are appointed and removed and whether the state can supervise the entity's operations, and (3) the entity's overall effect on the state treasury. *Id.* at 1030. We will consider each factor.

*District Attorneys' Offices and State Law*. The Oregon Supreme Court has declared that "[d]istrict attorneys in Oregon are state officers." *State ex rel. Rosenblum v. Nisley*,

---

[2] We recognize that the arm-of-the-state doctrine may be further reformed by the Supreme Court in its upcoming term. *See N.J. Transit Corp. v. Colt*, No. 24-1113, 2025 WL 1829162 (U.S. July 3, 2025); *Galette v. N.J. Transit Corp.*, No. 24-1021, 2025 WL 1829160 (U.S. July 3, 2025).

473 P.3d 46, 50 (Or. 2020) (en banc) (citation omitted). Although the court's statement in *Rosenblum* was clear enough, the case arose out of "unusual" proceedings in the Oregon Supreme Court challenging the qualifications of an attorney to serve as district attorney. *Id.* at 47–48. The court offered little analysis in support of its observation, but the statement has a long provenance. In a prior case, *State v. Clark*, the Oregon Supreme Court stated that "[d]istrict attorneys are state officers applying statewide, not local law." 630 P.2d 810, 819 (Or. 1981) (footnote omitted). In support, the court pointed to a provision in the original Oregon Constitution that created the office of district attorney, charged such offices with enforcing state law, and subjected them to further instructions from the Oregon Legislative Assembly. *Id.* at 819 n.15. The provision stated:

> There shall be elected by districts, comprised of one, or more counties, a sufficient number of prosecuting Attorneys, who shall be the law officers of the State, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of Law, and general police as the Legislative Assembly may direct.

Or. Const. art. VII (orig.), § 17. Under this provision:

> The district attorney [was] the law officer of the state, within the limits of his district, with the powers, in the absence of statutory regulation, of the attorney general at common law . . . . [W]hen . . . the district attorney files a *quo warranto* information in a distinctly state action, he has as much the sole

> control over it as the attorney general would
> have in a like case at common law.

*State v. Douglas Cnty. Rd. Co.*, 10 Or. 198, 201 (1882).

In 1910, Oregon amended Article VII and removed all references to district attorneys. *See Marteeny v. Brown*, 517 P.3d 343, 354–57 (Or. Ct. App. 2022) (discussing the history of Oregon district attorneys). The Oregon courts held that "[t]he effect of [the amendment of Article VII] was to retain the provisions of the original Article VII only until changed by the legislature." *State v. Coleman*, 886 P.2d 28, 30 (Or. Ct. App. 1994) (citation modified); *see State v. Farnham*, 234 P. 806, 808 (Or. 1925). Subsequent Oregon decisions have continued to treat district attorneys as state officers. *See Coleman*, 886 P.2d at 30 ("the legislature has expressly designated district attorneys as prosecutors 'on behalf of the state'" (quoting Or. Rev. Stat. § 8.660(1))); *Rutherford v. City of Klamath Falls*, 526 P.2d 645, 646 (Or. Ct. App. 1974) ("[A] post-conviction relief suit will be defended by a state officer, either the Attorney General or the district attorney depending upon the circumstances. There is no mention of defense by the city attorney . . . ."), *overruled on other grounds by*, *Hunter v. State*, 735 P.2d 1225 (Or. Ct. App. 1987).

As "the role of Oregon district attorneys is now statutory, rather than constitutional," *Marteeny*, 517 P.3d at 355, we should also look to Oregon statutes. *See generally* Or. Rev. Stat. §§ 8.610–.852 (creating and regulating the office of district attorneys). Not surprisingly, the statutes authorize district attorneys to enforce both state and county law. Oregon law provides that the district attorney is the "public prosecutor [in the county] and has the authority to appear and prosecute violations of the charter and ordinances of any city

[over which the county circuit court has jurisdiction]." *Id.*
§ 8.650. The district attorney shall "advise the county court
and other county officers on all legal questions that may
arise" and defend the county and any county officers and
employees sued for "act[s] and omission[s] in the
performance of official duty." *Id.* at § 8.690. On the other
hand, the statutes provide that "[t]he district attorney shall
attend the terms of all courts having jurisdiction of public
offenses within the district attorney's county,
and . . . conduct, on behalf of the state, all prosecutions for
such offenses therein." *Id.* § 8.660(1). Similarly, "[t]he
district attorney shall prosecute for all penalties and
forfeitures to the state that may be incurred in the county of
the district attorney . . . [and] prosecute or defend all actions,
suits and proceedings in the county to which the state is a
party." *Id.* § 8.680. For campaign finance purposes, "'State
office' means the office of Governor, Secretary of State,
State Treasurer, Attorney General, Commissioner of the
Bureau of Labor and Industries, state Senator, state
Representative, judge or district attorney." *Id.*
§ 260.005(23).

Although district attorneys have responsibilities to their
counties, the district attorneys' statutory duties to the state
strongly suggest that the office is a state office.

*Appointment, removal, and supervision.* Oregon law
provides that the "district attorney for each county shall be
elected by the electors of the county." *Id.* § 8.610. Any
person elected district attorney must file a certificate of
election with the Secretary of State. *Id.* § 8.620. In the event
that the office becomes vacant, the Governor has the power
to appoint a successor until the next election. *Id.* § 8.640.
Nothing in Oregon law addresses the removal of district
attorneys specifically, but the Secretary of State lists district

attorneys as a "state public officer" subject to recall by filing a petition with the state elections division. Sec'y of State of Or., Elections Div., *Recall Manual* at 4 (rev. 2024); *see* Or. Rev. Stat. §§ 249.002(10), 258.055(3)(a), 260.005(23).

Although the electorate ostensibly has a check on district attorneys, nothing in Oregon statutory law places district attorneys under the direction of county commissions. It is the Attorney General who has "supervisory authority over district attorneys' core functions." *Marteeny*, 517 P.3d at 355–56. Oregon law provides that

> [t]he Attorney General shall consult with, advise, and direct the district attorneys in all criminal causes and matters relating to state affairs in their respective counties. The Attorney General may require their aid and assistance in all matters pertaining to the duties of the Attorney General in their respective counties and may, in any case brought to the Supreme Court or the Court of Appeals from their respective counties, demand and receive assistance of the district attorney from whose county such case or matter is brought.

Or. Rev. Stat. § 180.060(5). The Attorney General has authority commensurate with that of district attorneys. "The Attorney General and the Department of Justice shall have the same powers and prerogatives in each of the several counties of the state as the district attorneys have in their respective counties." *Id.* § 180.240. The Attorney General may convene a grand jury and institute prosecutions in any circuit court in the state and, when so doing, "shall have all

the powers of a district attorney." *Id.* § 180.070(2). Likewise, the Attorney General "shall consult with, advise and direct the district attorneys in all criminal causes and matters relating to state affairs in their respective counties." *Id.* § 180.060(5).

If directed by the Governor, the Attorney General may assume control of a case and exercise the powers of the district attorney, and in such a situation, the district attorney may "only exercise such powers and perform such duties . . . as are required of the district attorney by the Attorney General." *Id.* § 180.080. For example, the Governor may direct the Attorney General to "take full charge of any investigation or prosecution of violation of law in which the circuit court has jurisdiction." *Id.* § 180.070(1). But the Attorney General's power to assume control over a specific prosecution at the Governor's direction "does not deprive the district attorney[] of any of their authority, or relieve them from any of their duties to prosecute criminal violations of law and advise the officers of the counties composing their districts." *Id.* § 180.070(4). In other words, the Attorney General may act as a special prosecutor within a district attorney's district for a specific case, but the Attorney General does not assume all authority or duties of the district attorney. *See Oregon v. Williams*, 336 P.2d 68, 74–75 (Or. 1959).

Although district attorneys are elected county-by-county, the office is created by state law, and the Governor, not the county, has the power to fill any temporary vacancy in the office. While the county government itself may seek the district attorney's advice and is to be represented by the district attorney in litigation, the county does not otherwise exercise control over the district attorney. More importantly, the Oregon Attorney General has substantial authority to

supervise district attorneys.  This factor ultimately favors a determination that the office is a state office.

*Financial matters.*  "Although Oregon's DAs are elected by and accountable to the people in their respective counties, they are considered state officers whose salaries are paid by the State."  *Oregon's 36 District Attorneys*, Or. Blue Book, https://perma.cc/DMM3-D88C.  The state sets the salary schedule for district attorneys.  Or. Rev. Stat. §§ 8.852, 240.240(2).  A district attorney's salary can be augmented by the county, *id.* § 8.830, and the county is responsible for district attorneys' office space and facilities, supplies, and assistance, *id.* § 8.850.

The question of what level of Oregon government would be responsible for any judgment against MCDA is reasonably clear.  For indemnity purposes, "'state officer, employee or agent' includes district attorneys and deputy district attorneys, special prosecutors and law clerks of the office of district attorney who act in a prosecutorial capacity, but does not include any other employee of the office of district attorney . . . whose salary is paid wholly or in part by the county."  *Id.* § 30.285(7).[3]  At oral argument, both the state and the county advised us that the State of Oregon would be responsible for any judgment against MCDA or the district attorneys.

---

[3] We note that unlike district attorneys, who are paid by the state, deputy district attorneys are "paid out of the county funds in the same manner as county officers are paid."  Or. Rev. Stat. § 8.760.  Nevertheless, Oregon law provides that "[a] deputy district attorney . . . has the same functions as the district attorney," *id.* § 8.780, and the state remains on the hook to indemnify deputy district attorneys, *id.* § 30.285(7).  We see no reason to distinguish between district attorneys and their deputies for Eleventh Amendment purposes.

This factor favors finding that the district attorney's office is a state office.

\* \* \*

On balance, we are persuaded that MCDA is a state office, and district attorneys and deputy district attorneys are state officers, as the Oregon courts have concluded.[4] The prosecutor Defendants are state actors shielded by the Eleventh Amendment and may not be sued in their official capacity for money damages. The district court properly dismissed with prejudice all claims[5] against them and MCDA.

### 2. District Attorneys Underhill and Schmidt

Plaintiffs also sued District Attorneys Underhill and Schmidt in their personal capacities. They claim that the district court erred in holding that Underhill and Schmidt had immunity for their prosecutorial decisions. Plaintiffs

---

[4] Plaintiffs argue that, notwithstanding Oregon law, in *Williams v. Reed*, 604 U.S. 168 (2025), the Supreme Court removed the authority of states to immunize state actors from federal liability. Plaintiffs have overread *Williams*. In that case, the Court held that Alabama courts could not refuse to hear § 1983 cases seeking injunctive relief in the form of an order directing a state agency to render a decision on unemployment claims based on a state administrative exhaustion rule. 604 U.S. at 170–72. In so holding, the Court reiterated its long-standing rule that "'a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court.'" *Id.* at 174 (quoting *Felder v. Casey*, 487 U.S. 131, 139 (1988)). *Williams* did not involve the Eleventh Amendment, which is the basis for MCDA's claim to sovereign immunity.

[5] Absent an express waiver by the state, the Eleventh Amendment bars both federal and state-law claims against state officers in federal court. *See Alden v. Maine*, 527 U.S. 706, 735 (1999); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–99 (1984).

contend that the District Attorney Defendants intentionally singled them out for prosecution for the incident at Cider Riot, and that Schmidt knowingly failed to enforce his non-prosecution policy equally between right-wing and left-wing protestors. Defendants claim they are entitled to absolute immunity for these claims because they were prosecutorial acts.[6]

Prosecutors are absolutely immune "for actions 'intimately associated with the judicial phase of the criminal process,' such as the prosecutor's initiation of a prosecution and presentation of the state's case." *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Absolute immunity does not protect prosecutors merely because they are prosecutors; rather, immunity turns on "the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (citation omitted). Thus, unlike sovereign immunity, which is based on the Eleventh Amendment and is entity-based, prosecutorial immunity is grounded in common-law and prudential concerns and is activity-based. *See id.* at 123–24; *Kohn*, 87 F.4th at 1029. A prosecutor is immune from suits

---

[6] Although we conclude in the next section that Plaintiffs' pleading is deficient, we are able to address this claim to immunity for a few reasons. First, the complaint's factual averments demonstrate that Plaintiffs challenge the District Attorneys' prosecutorial decisions, including their purportedly uneven application of the non-prosecution policy. Second, a copy of the non-prosecution policy is included in the record. Third, emails between MCDA prosecutors and Plaintiffs' counsel in their criminal case related to the retroactive application of the non-prosecution policy are included in the record. With these pieces of the puzzle, and cognizant of our duty to decide immunity questions as soon as practicable, we can analyze Defendants' assertion of prosecutorial immunity at this juncture.

stemming from their advocacy but not for administrative or investigative tasks. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).

Prosecutors have wide discretion to decide who to charge. *See Hovey v. Ayers*, 458 F.3d 892, 921 (9th Cir. 2006). "A prosecutor has absolute immunity for the decision to prosecute . . . [and] the decision not to prosecute." *Roe v. City & Cnty. of S.F.*, 109 F.3d 578, 583 (9th Cir. 1997) (citations omitted). A decision to prosecute or not prosecute a matter is a complex interplay of law, facts, resources, and intuition. *See Wayte v. United States*, 470 U.S. 598, 607 (1985). Although an indictment or information, once filed, may be challenged in the course of the proceeding, the prosecutor's decision whether, when, and what kind of cases should be charged is not subject to our review prior to the bringing of the charges. "Public prosecutions, until they come before the court to which they are returnable, are within the exclusive discretion of the district attorney . . . ." *The Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457 (1868); *see United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (whether and what to charge "rests entirely in [the prosecutor's] discretion").

To be sure, although "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation," selectivity "deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification" would be grounds for dismissing the criminal action. *Oyler v. Boles*, 368 U.S. 448, 456 (1962); *see United States v. Armstrong*, 517 U.S. 456, 464 (1996); *cf. United States v. Wilson*, 123 F.4th 1021, 1027–28 (9th Cir.

2024).  But our power to dismiss an unjust criminal action does not extend to imposing civil penalties against the prosecutor under § 1983, "insofar as [the prosecutor's conduct] is 'intimately associated with the judicial phase of the criminal process.'"  *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citation omitted).

In civil cases such as this one, we will not consider a prosecutor's motivation when making prosecutorial decisions; the prosecutor's motivation is irrelevant to the immunity inquiry, even if we thought the motivation was unconstitutional.  *See McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987).  As we explained in *Ashelman v. Pope*, "[i]ntent should play no role in the immunity analysis. Moreover, allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence."  793 F.2d 1072, 1078 (9th Cir. 1986) (en banc) (citations omitted); *see Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016); *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503–05 (2d Cir. 2004); *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992).  Consistent with this reasoning, we have acknowledged that absolute "immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution."  *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).  We have immunized prosecutors for their prosecutorial acts even where they supposedly acted maliciously or intentionally.  *See McCarthy*, 827 F.2d at 1315 (rejecting a plaintiff's plea to recognize an exception to absolute prosecutorial immunity based on "the egregious nature of th[e] case").  We recognize that "[t]his immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest

action deprives him of liberty." *Imbler*, 424 U.S. at 427. Nevertheless, "[t]he alternative of qualifying a prosecutor's immunity would . . . prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427–28.

Here, Plaintiffs seek to hold the District Attorney Defendants individually liable for charging some individuals and declining to charge others based on their political expression. For better or worse, these are proceedings that are "intimately associated with the judicial phase of the criminal process," *Burns*, 500 U.S. at 486, and are protected by absolute prosecutorial immunity, *Roe*, 109 F.3d at 583. Regardless of the prosecutors' motives for charging Plaintiffs, such as silencing Plaintiffs' speech or preventing their participation in the upcoming protest, the District Attorney Defendants are entitled to absolute immunity for their charging decisions. *Imbler*, 424 U.S. at 431.

Plaintiffs point to Schmidt's adoption of the non-prosecution policy related to riot and claim that adopting the policy was a legislative act, not a prosecutorial one, and thus is not entitled to immunity. This argument is meritless. We have held that a prosecutor's adoption of a non-prosecution policy is a prosecutorial act protected by absolute immunity. *See, e.g.*, *Botello v. Gammick*, 413 F.3d 971, 977 (9th Cir. 2005); *Roe*, 109 F.3d at 583. Decisions whether to prosecute a single case or a series of cases are still charging decisions, and charging decisions are prosecutorial, not legislative acts. *See Roe*, 109 F.3d at 583. We decline Plaintiffs' invitation to ignore our precedent and deem a prosecutorial act a legislative one merely because it involves a question of enforcement policy related to a statute. District Attorneys Underhill and Schmidt are entitled to absolute immunity for

their prosecutorial decisions.  Schmidt is entitled to absolute immunity in connection with promulgating and enforcing his non-prosecution policy.

### 3.   Deputy District Attorneys Hughey and Kalbaugh

Plaintiffs likewise sued Deputy District Attorneys Hughey and Kalbaugh in their individual capacities.  To the extent that they were involved in prosecutorial activities, they are entitled to absolute immunity for the same reasons described above.

There is one important twist here.  Plaintiffs contend that Kalbaugh presented knowingly false testimony to obtain an arrest warrant.  They argue that the district court erred by granting Kalbaugh absolute immunity because filing a probable cause affidavit is not a prosecutorial function warranting absolute immunity.  They also argue that, aside from his role as prosecutor, he is not entitled to qualified immunity.  We agree and reverse the district court's dismissal of this action against Kalbaugh in his individual capacity.

As we have discussed above, prosecutors are absolutely immune for their conduct in connection with the prosecution and presentation of the state's case.  "To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, [we] must take account of the 'functional' considerations . . . ."  *Van de Kamp*, 555 U.S. at 342.  Such "functions are those 'intimately associated with the judicial phase of the criminal process,' in which the prosecutor is acting as 'an officer of the court.'"  *Lacey*, 693 F.3d at 912 (quoting *Van de Kamp*, 555 U.S. at 342).  They typically include actions taken to initiate the judicial process, such as "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular

defendants, which witnesses to call, and what other evidence to present." *Imbler*, 424 U.S. at 431 n.33.

The Supreme Court has "held that absolute immunity does not apply . . . when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp*, 555 U.S. at 343 (citing *Kalina*, 522 U.S. at 132 (Scalia, J., concurring)). A prosecutor is a complaining witness when he "certif[ies] that the facts alleged within an affidavit are true." *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 845 (9th Cir. 2016) (citation modified). Likewise, prosecutors are not performing a prosecutorial function when they undertake a role that could be fulfilled by someone other than a prosecutor—"an act that any competent witness might have performed." *Kalina*, 522 U.S. at 129–30; *id.* at 130–31 ("Testifying about facts is the function of the witness, not of the lawyer. . . . Even when the person who makes [a] constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.").

Notwithstanding the clarity of the Court's statements, Kalbaugh claims that there are extenuating reasons that he is entitled to absolute immunity or, alternatively, qualified immunity. We address each in turn.

*Absolute Immunity*. Kalbaugh posits three reasons he deserves absolute immunity. First, he merely "recited evidence that was available to the state and argued that the state's position was that the evidence established probable cause." Second, he only related "what the detective reported to him based on what the detective saw and learned while investigating the case." Third, he points out that signing these affidavits is a common practice of prosecutors, and permitting this litigation would allow disgruntled defendants

to relitigate their criminal cases.  None of these arguments is convincing.

Under Oregon law, someone had to serve as the complaining witness.  Or. Const. art. I, § 9 ("no warrant shall issue, but on probable cause supported by oath or affirmation"); *see Kalina*, 522 U.S. at 129 (describing the similar Fourth Amendment requirement).  But "neither federal nor state law made it necessary for [Kalbaugh, as the prosecutor,] to make that certification." *Kalina*, 522 U.S. at 129.  It was Kalbaugh's choice to file his own affidavits, it was his signature on the affidavits, and it was his assertion of probable cause. *See Morley v. Walker*, 175 F.3d 756, 758, 760 (9th Cir. 1999).

Kalbaugh did not merely recite the state's evidence; he personally attested to the truth of the statements contained in his affidavits.  The affidavits began:

> I, Brad Kalbaugh, having been first duly sworn, depose and say that the accompanying accusatory instrument is based upon the information set forth below, which is true as *I* verily believe.  That I am employed as a Deputy District Attorney for Multnomah County, Oregon.  That in the course of my duties, *I* have learned or have been told the following concerning the investigation of criminal acts in Multnomah County, Oregon, committed by [Plaintiffs].

Although Kalbaugh noted that he was a deputy prosecutor and that he learned this information in that capacity, he made multiple "I" statements that suggest that he is the affiant, not the state.  He swore that he, not the state, verily believed the

averments in the affidavits.  He attested that he, not the state, had learned or was told about the facts of the investigation. At the end of each affidavit, Kalbaugh wrote, "*I* have probable cause to believe that [Plaintiff] has committed the crime(s) of:  Count 1 – RIOT. *I* move the Court on the within that a warrant be issued for the apprehension of said defendant."   Finally, the affidavits contained Kalbaugh's signature without any qualifier, such as "on behalf of the state" or "for the Multnomah County District Attorney's Office."   Kalbaugh was personally testifying to the truthfulness of his statements.  Admittedly, Kalbaugh likely would not have filed the affidavit if he was not a prosecutor, but that just underscores that he had control of the filings in the case and chose to file the affidavit himself.  The fact remains that "any competent witness" could have made these statements. *See Kalina*, 522 U.S. at 129–30.

Likewise, Kalbaugh's argument that he was only reciting what Detective Traynor had told him he observed, such that Kalbaugh was not the complaining witness himself, is unpersuasive.  Kalbaugh could have asked Traynor to be the complaining witness.  Kalbaugh did not, and he signed the affidavit.  Although he conceded in the affidavit that he was not an eyewitness, he essentially vouched for Traynor, who had not attested to the facts in the affidavit.  And more importantly, Kalbaugh is now asking the court to rely on his vouching for Traynor.

Lastly, it is no answer that prosecutors must be immune because they routinely file affidavits like this one.  The frequency with which prosecutors take an action does not transform that action into a prosecutorial function. Prosecutors frequently drive to court; surely, a prosecutor could not claim immunity from a tort suit if he hit a pedestrian on his way there.  Otherwise, there would be no

need for the functional approach to absolute immunity, as any frequent action of a prosecutor would warrant immunity. We have rejected such a categorical approach. *Torres*, 793 F.3d at 1051. Immunity shields prosecutors engaged in prosecutorial conduct, absolutely, not prosecutors, absolutely. *Id.* The district court erred by granting Kalbaugh absolute immunity.

*Qualified immunity*. Although Kalbaugh is not entitled to absolute immunity as a prosecutor, as the complaining witness, he may be entitled to qualified immunity in the same manner as other state witnesses. A state actor is entitled to qualified immunity if his "conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818; *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017). This is a two-step inquiry, but we may decide the questions in any order and need not reach the second question if our answer to the first is dispositive. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). We first ask whether the conduct violated a constitutional or statutory right. If so, we then ask whether that right was clearly established. *See id.* at 232. If there was no violation of a constitutional right, the cause of action fails on the merits; if, however, there was a violation of a constitutional right, but the right was not clearly established, the defendant is immune from suit. *See id.* at 231.

When ascertaining if a right was clearly established, the Supreme Court has cautioned us not to view the right at a high level of generality. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). A right is clearly established where "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). "[T]he burden is on Plaintiffs to

show that 'the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 922 (9th Cir. 2024) (citation omitted) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018)).

In this case, Plaintiffs alleged that Kalbaugh knowingly presented false statements to secure an arrest warrant, and that he knew that a judge would not have issued the warrant absent the false statements. We have held since at least 1991 that a state actor who presents knowingly false testimony in support of a probable cause determination for an arrest warrant, where the warrant would not have issued without the false statements, violates the Fourth Amendment. *See, e.g.*, *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1295 (9th Cir. 1999); *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995) (citations omitted); *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). No reasonable prosecutor in Kalbaugh's shoes would have believed that his alleged conduct did not violate the Fourth Amendment; the act's "unlawfulness [was] apparent." *Anderson*, 483 U.S. at 640 (citations omitted). Because at this stage of the proceedings we must accept the facts pleaded in the complaint, Plaintiffs have alleged sufficient facts to show Kalbaugh is not protected by qualified immunity.

\* \* \*

The recourse for improper prosecutorial conduct may lie in sanctions, in dismissal of criminal cases, in professional disciplinary proceedings, or, where the position is an elected one, in the voting booth, but not in a § 1983 lawsuit. *See*

*Imbler*, 424 U.S. at 428–29. As the Supreme Court has acknowledged, the interest in having independent prosecutors unafraid of lawsuits for their charging decisions necessitates the "strong medicine" of absolute immunity. *Forrester v. White*, 484 U.S. 219, 230 (1988) (citation omitted); *see Burns*, 500 U.S. at 485–86; *see also Milstein*, 257 F.3d at 1007 (citations omitted) (describing the policy justifications for absolute prosecutorial immunity). That strong medicine is called for here, and the district court properly dismissed with prejudice all claims[7] against the District Attorney Defendants and Deputy District Attorney Hughey, in their individual capacities, based on their charging decisions and enforcement of their non-prosecution policy. It erred, however, when it extended that protection to Deputy Assistant District Attorney Kalbaugh for filing his affidavits, actions that were not inextricably tied to his responsibilities as a prosecutor.

### 4. Multnomah County

The district court ruled that Multnomah County is immune from Plaintiffs' Oregon-law claims for malicious prosecution, false arrest and imprisonment, and negligence. Specifically, the district court concluded that because the

---

[7] Under Oregon law, prosecutors are similarly entitled to absolute immunity "for acts performed in initiating prosecutions," including "decision[s] as to 'when, how, and against whom to proceed.'" *Heusel v. Multnomah Cnty. Dist. Att'y's Off.,* 989 P.2d 465, 467 (1999) (quoting *Watts v. Gerking*, 111 Or. 641, 657 (1924)); *see also Tennyson v. Children's Servs. Div.*, 308 Or. 80, 86 (1989) (explaining that state prosecutors performing "functions that are 'integral parts of the judicial process,'" including "initiating criminal prosecutions, . . . are entitled to absolute immunity"). We thus agree with the district court's conclusion that District Attorney Defendants and Deputy District Attorney Hughey are entitled to absolute immunity from Plaintiffs' state-law claims.

prosecutor Defendants are entitled to absolute immunity from Plaintiffs' state-law claims, Oregon law shields Multnomah County from liability for their conduct. *See* Or. Rev. Stat. § 30.265(5) ("Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employee or agent of a public body when such officer, employee or agent is immune from liability."). Because we have already concluded that MCDA and Multnomah County are separate legal entities, and that the district attorneys and deputy district attorneys are state employees, § 30.265(5) has no application here.[8] On remand, Plaintiffs should be permitted to replead their claims against Multnomah County, but only to the extent that they are not based on the acts or omissions of MCDA or the prosecutor Defendants.

### 5. Detective Traynor

The district court ruled that Detective Traynor is absolutely immune from liability for any claim arising from his grand jury testimony. We agree.

Under both state and federal law, "[w]itnesses, including police officers, are absolutely immune from liability for testimony . . . before a grand jury." *Lisker v. City of Los*

---

[8] We are aware that in *Jackson v. Multnomah Cnty.*, 709 P.2d 1153 (Or. Ct. App. 1985), Multnomah County "d[id] not dispute that it is responsible for the acts of [a] deputy district attorney." *Id.* at 1155 n.4. The question was purely hypothetical, however, because the deputy district attorney in that case was immune from liability, so the County would have been immune as well under § 30.265(5). *Id.* Moreover, the County's apparent concession in *Jackson* is inconsistent with the later-enacted § 30.285(7), which imposes state liability for the acts of "deputy district attorneys" but not of other "employee[s] of the office of district attorney . . . whose salary is paid wholly or in part by the county."

*Angeles*, 780 F.3d 1237, 1241 (9th Cir. 2015) (citing *Rehberg v. Paulk*, 566 U.S. 356, 375 (2012)); *see Tennyson*, 308 Or. at 86.  That immunity extends to conspiracies to provide false testimony and to any other "preparatory activities" that are "inextricably tied" to the witness's testimony.  *Lisker*, 780 F.3d at 1241.  It does not, however, extend to "'non-testimonial' acts, such as 'tampering with documentary or physical evidence or preventing witnesses from coming forward.'"  *Id.* at 1242 (citation omitted).

Here, many of Plaintiffs' allegations against Detective Traynor arise directly from or are inextricably intertwined with his grand jury testimony.  The district court correctly determined that Traynor is absolutely immune from claims arising from that conduct.  The district court also properly granted Traynor immunity from Plaintiffs' claims only to the extent they arise out of his grand jury testimony; on remand, Plaintiffs may replead their claims to allege other conduct for which Traynor might not be immune.

## B.  *Rule 8*

Plaintiffs challenge the district court's conclusion that the complaint failed to conform to Rule 8(a)(2),[9] which

---

[9] The dissent's party-presentation argument that the record has not "invite[d] us to consider the shotgun-pleading rule" is perplexing. Dissenting Op. at 59. At least one Defendant moved to dismiss the complaint specifically on the ground that it "fails to comply with Federal Rule of Civil Procedure 8(a)(2)"; the district court separately addressed that argument, agreeing that the complaint constituted a "[s]hotgun pleading" and noting that such pleadings are subject to dismissal; Plaintiffs dedicated separate sections of their Opening and Reply Brief to challenging the district court's Rule 8(a)(2) dismissal; and MCDA likewise dedicated a separate section of its Answering Brief to arguing that the complaint was properly dismissed under Rule 8(a)(2).  That some of the parties may not have expressly used the term "shotgun

mandates that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The district court held that the complaint "contain[ed] several broadly pled facts in which Plaintiffs assert[ed] allegations against 'Defendants' without specifying which defendants engaged in the act. In addition, Plaintiffs' claims under § 1985, § 1986, and state law incorporate all factual allegations of the 46-page [complaint] and lump all Defendants together." Noting that a complaint that engages in shotgun pleading violates the Federal Rules and is subject to dismissal, the district court concluded: "Plaintiffs plead multiple claims and do not identify which specific facts are allocated to which claim and, as such, they fail to satisfy Rule 8(a)(2)."

On appeal, Plaintiffs argue that they "set forth an extremely detailed chronological narrative identifying specific misconduct of each Defendant." Furthermore, Plaintiffs contend that if they had repeated all of this information in each of their four claims for relief, they would have violated Rule 8(a)'s imperative against repetition. But Plaintiffs misread Rule 8's requirements, and the district court properly dismissed the complaint as a shotgun pleading.

### 1. Shotgun Pleadings

We are to construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Rule 8 requires every "pleading that states a claim for relief [to] contain" three

---

pleading" does not prevent us from addressing the substance of the district court's ruling and the parties' arguments.

things: "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3). The Supreme Court's decision in *Ashcroft v. Iqbal* supplies the guidelines for applying Rule 8:

> The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

556 U.S. at 678 (citation modified) (quoting *Twombly*, 550 U.S. at 555, 557). *Iqbal* requires attention to the pleading of both facts and law. A complaint may be deficient because it does not provide sufficient facts to support a cause of action; on the other hand, even "well-pleaded facts" are not sufficient if they are accompanied by only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The goal here is to provide "sufficient notice" so the parties and the court can "focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam) (applying Rule 8); *Starr v. Baca*, 652 F.3d 1202, 1212–16 (9th Cir. 2011) (discussing *Iqbal* and applying Rule 8).

With these principles in mind, we are prepared to discuss the problem of shotgun pleadings. A shotgun pleading is one where "a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts or defenses from all previous counts into each successive count . . . prevent[ing] the opposing party from reasonably being able to prepare a response or simply mak[ing] the burden of doing so more difficult." 5A *Wright & Miller's Federal Practice and Procedure* § 1326 (4th ed. 2024). Incorporation by reference is permitted by Rule 10(b) and (c), but when it is used indiscriminately, it becomes a shortcut by counsel that violates Rule 8. There are four main types of shotgun pleadings:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

35A C.J.S. *Fed. Civ. Proc.* § 310 (2025); *see also* 61A Am. Jur. 2d *Pleading* § 159 (2025) (discussing the "four rough types or categories of shotgun pleadings"). As we noted above, the problem with shotgun pleadings is that they make

it difficult, if not impossible, for the opposing party to formulate a response. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). But the defendant is not the only interested party affected. "[Shotgun pleadings] waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citation modified) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 981–83 (11th Cir. 2008), *abrogated on other grounds by*, *Twombly*, 550 U.S. at 544).

We have discussed the relationship between shotgun pleadings and Rule 8 briefly in one published opinion. In *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011), we affirmed a district court's dismissal with prejudice of the plaintiffs' second amended complaint as a shotgun pleading. *Id.* at 958–59. The complaint alleged fraud, which fell under the ambit of Rule 9(b)'s demand of particularity in pleading. *Id.*; *see* Fed. R. Civ. P. 9(b). However, we noted that the complaint also failed under Rule 8(a)(2)'s "short and plain statement" requirement. *Destfino*, 630 F.3d at 959. We found that "the district court gave plaintiffs several chances to amend, with detailed instructions as to what they needed to do to fix the problems with their complaint. Plaintiffs failed to comply . . . and it was therefore proper for the court to dismiss their entire complaint without further leave to amend." *Id.*

Several of our sister circuits have either expressly adopted, acknowledged, or applied some variation of a

shotgun pleading rule. For example, in *Lee v. Ohio Education Ass'n*, 951 F.3d 386 (6th Cir. 2020), the plaintiff placed "all seven of her state-law causes of action . . . within a single sentence." *Id.* at 392. The Sixth Circuit found that this practice violated both Rule 8(b)(2) by "fail[ing] to connect specific facts or events with the various causes of action she asserted" and Rule 10(b) by failing to separate her causes of action into separate counts. *Id.* at 392–93 (internal quotation marks and citation omitted). And as the Eleventh Circuit has explained:

> [W]hen faced with a complaint [that lumps multiple claims together in one count, and] in which the counts incorporate by reference all previous allegations and counts, the district court must cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to the claim. This task can be avoided if the defendant moves the court for a more definite statement or if the court, acting on its own initiative, orders a repleader.

*Ledford v. Peeples*, 605 F.3d 871, 892 (11th Cir. 2010), *vacated on other grounds*, 657 F.3d 1222 (11th Cir. 2011); *see* Fed. R. Civ. P. 12(e) (authorizing motions for a more definite statement). The Eleventh Circuit has been the most vocal of the circuits. *See Vibe Micro*, 878 F.3d at 1295 (observing that "[c]ourts in the Eleventh Circuit have little tolerance for shotgun pleadings"). Relying on a district court's "inherent authority to control its docket and ensure the prompt resolution of lawsuits," the Eleventh Circuit permits district courts to dismiss shotgun pleadings, subject

to an abuse of discretion standard of review. *Id.* (citation omitted). Other circuits have addressed the problem as well. *See*, *e.g.*, *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (stating that a "kitchen sink" pleading violates the Federal Rules); *U.S. ex rel. Est. of Cunningham v. Millenium Labs. of Cal., Inc.*, 713 F.3d 662, 664 n.2 (1st Cir. 2013) ("Ordinarily, the issue of stating multiple claims in a single count is dealt with as a 'shotgun' pleading, or a pleading that fails to identify claims with sufficient clarity to enable a defendant to frame a responsive pleading."); *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between notice pleading and 'shotgun' pleading."); *see also Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114–15 (2d Cir. 1982) (discussing a shotgun pleading's deficiencies, albeit in the Rule 9 context).

This case provides us with an opportunity to make clear that district courts do not have to accept such shotgun pleadings. It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts. Whether the parties have raised the issue or not, the district court has "inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)." *Weiland*, 792 F.3d at 1320; *see Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (stating that a district court has "inherent power over the administration of

its business [and] inherent authority to . . . enforce rules for the management of litigation" (citations omitted)).

We recognize that Rule 8 supplies a standard, not a rule. "Shotgun pleading" describes a class of defects in complaints; it does not supply a brightline rule. It will require judgment on the part of the district courts to determine those complaints that fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis. But when district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood. In other words, we clarify today that Rule 8 provides district courts with an additional *tool* that they *may* use to dismiss shotgun pleadings when identified—not a *rule* necessarily *requiring* district courts to do so, however prudent it may be.

The standard we recognize in this case is a salutary one. First, permitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8. Shotgun pleading undermines a fundamental purpose of Rule 8, which is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief. *See Starr*, 652 F.3d at 1212. And accepting such a pleading is inconsistent with Rule 1's dictate that the Federal Rules should "promote the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. It is not just, speedy, or inexpensive to force opposing parties and courts to separate the wheat from the chaff in a complaint. Second, this is a doctrine our district courts are already regularly using, often while citing out-of-circuit

precedent.[10]   We have a prudential obligation to clarify to district courts that in an appropriate case, like this one, they can dismiss shotgun pleadings.  Third, from a judicial policy perspective, enforcing a bar against shotgun pleading, but allowing the party to re-plead the complaint, not only provides better notice to opposing parties of the claims against them, but prevents the needless expenditure of finite judicial resources.  The dissent argues that Rule 12(e)'s mechanism permitting a party to seek a more definite statement is a sufficient prophylaxis to guard against shotgun pleadings.  Dissenting Op. at 62–65.  We recognize that Rule 12(e) is an important tool for a *party* to seek clarification. But the district courts should not be forced to wade through a morass of allegations, trying to determine how the facts might relate to the causes of action, simply because a party failed to bring a Rule 12(e) motion.  *See*, *e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (acknowledging judicial efficiency concerns for class certification); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998) (same for habeas corpus); *Planned Parenthood of*

---

[10] We have surveyed published and unpublished opinions in our circuit in which district courts have either required a party to replead a shotgun complaint or dismissed a party for failure to correct a shotgun pleading. Every district in our circuit except the District of Guam, which has not had occasion to address the question, has recognized that complaints may be dismissed if they amount to so-called "shotgun pleadings." *See*, *e.g.*, *John Ketch LLC v. San Juan Cnty.*, 759 F. Supp. 3d 1121, 1131–35 (W.D. Wash. 2024); *Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1000 (E.D. Cal. 2022); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943–44 (D. Or. 2020); *SEC v. Bardman*, 216 F. Supp. 3d 1041, 1051–52 (N.D. Cal. 2016); *Kim v. Quichocho*, 708 F. Supp. 2d 1079, 1089–91 (N. Mar. I. 2010); *Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007).

*S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (same for supplemental pleading).

### 2.    Deficiencies in the Complaint

With that background in mind, we turn to the complaint before us to explain why Plaintiffs' complaint is deficient.  Let us begin with an important observation:  the inadequacies are not in the facts Plaintiffs have set forth. Whatever else may be said of Plaintiffs' allegations, Plaintiffs pleaded detailed facts in 252 numbered paragraphs.  We cannot fault Plaintiffs for deciding to err on the side of greater detail in the facts.  This is a complicated case involving what Plaintiffs believe is a months-long conspiracy among a variety of government actors to deprive them of their civil rights. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1199–1200 (11th Cir. 2025) ("The factual allegations naturally relate to multiple counts and 'lengthy descriptions' are required to flesh out the plaintiffs' claims.  Put differently, though 'the facts are voluminous, overall they are not conclusory, vague, and immaterial." (citations omitted)).

The problem arises once we get to Plaintiffs' four claims for relief.  All details evaporate when they had to link their facts to their causes of action.  We review each claim for relief against Rule 8 here to explain why Plaintiffs' complaint is not adequate.

*First Claim for Relief:    § 1983*.  The first claim is Plaintiffs' most important claim.  It is also their most unsatisfactory.  It contains two main paragraphs, each with

subparagraphs.      After Paragraph 253 incorporates
Paragraphs 1–252, Paragraph 254 claims as follows:

> Plaintiffs were deprived of rights guaranteed
> to them under the U.S. Constitution by
> defendants, acting under color of state law, in
> one or more of the following particulars:
>
>> (a) Plaintiffs were deprived of their rights
>> of free speech and to peaceably
>> assemble under the First Amendment,
>> free from governmental retaliation;
>>
>> (b) Plaintiffs were deprived of their rights
>> to fair judicial proceedings under the
>> Fifth Amendment;
>>
>> (c) Plaintiffs were deprived of their right to
>> travel to the City of Portland, protected
>> under the Fifth Amendment and/or the
>> Privileges and [sic] Immunities Clause
>> of the Fourteenth Amendment;
>>
>> (d) Plaintiffs were deprived of their right to
>> equal protection of the laws under the
>> Fourteenth Amendment; and
>>
>> (e) Plaintiffs were deprived of their liberty
>> and property by reason of defamation
>> by defendants.

This is a classic shotgun pleading.  Indeed, it violates three
of the four categories of shotgun pleadings we previously
listed:  It contains multiple counts, incorporating allegations
for all preceding counts; it is conclusory and vague; and it
asserts multiple claims against multiple defendants without

identifying who did what. *See* 35A C.J.S. *Fed. Civ. Proc.* § 310. We will go through each category.

First, the claim has multiple counts. It alleges violations of the First, Fifth, and Fourteenth Amendments. With respect to the Fourteenth Amendment, it alleges separate violations of the Privileges or Immunities, Equal Protection, and Due Process Clauses. Even though all of the subclaims are constitutional in nature, they are disparate claims: retaliation for the exercise of speech and assembly, deprivation of fair judicial proceedings, deprivation of the right to travel, deprivation of equal protection, and deprivation of due process rights through defamation. These five separate causes of action are bundled into a single claim, and each of which is, apparently, supported by *all* of the facts alleged in Paragraphs 1 through 252. Rule 8(d)(2) permits a party to "set out 2 or more statements of a claim . . . either in a single count . . . or in separate ones," but that does not relieve the party of the obligation to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Second, the claim is conclusory and vague. In *Iqbal*, the Court warned that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. We do not have even "threadbare recitals of the elements of a cause of action" here. *Id.* Are we really to believe that, whatever the facts, Plaintiffs' claim to a violation of their right to travel in Paragraph 254(c) has the same factual and legal basis as their claim to defamation in Paragraph 254(e)? That being deprived of a right to a fair judicial proceeding in Paragraph 254(b) has the same factual and legal basis as a deprivation of the right to free speech and assembly in Paragraph 254(a)? If so, the connection has eluded us.

Third, the claim has both multiple claims and multiple defendants.  The Defendants here include three governmental entities, four prosecutors, and one police detective.  Did all of the Defendants violate Plaintiffs' constitutional rights with respect to each of the five subclaims?  To take one example, did MCDA defame Plaintiffs?  Multnomah County?  The City of Portland?  If the City defamed them, is that allegation based on Mayor Wheeler's statements to the press or on the City Council's resolution, or both?  What statement did Detective Traynor make that could satisfy the elements of a defamation claim?  These criticisms can be multiplied across Plaintiffs' claims. When Plaintiffs couch their allegations in passive voice ("Plaintiffs were deprived . . ."), they have abandoned their duty to identify who is responsible and have invited Defendants, the district court, and this court to fill in the blanks.  Moreover, because the complaint refers to all of the facts, it fails to identify the *specific* actions that amounted to these violations.  None of this is clear from the complaint. These allegations require repleading.

Paragraph 255, still within the First Claim for Relief, offers more detail than Paragraph 254 but raises a whole new set of questions:

> The foregoing facts establish one or more customs or policies which inflicted the injuries upon plaintiffs, including but not limited to:
>
> (a) On the part of defendant City of Portland and Traynor, to defame plaintiffs, abuse police powers to insulate plaintiffs' political opponents from liability for criminal misconduct, and abuse law

enforcement authority to falsely accuse plaintiffs of criminal conduct.

(b) On the part of defendants Multnomah County, MCDA, Underhill, Schmidt, Kalbaugh and Hughey to defame plaintiffs, selectively prosecute plaintiffs, and abuse prosecutorial discretion to insulate plaintiffs' political opponents from liability for criminal misconduct.

(c) On the part of all defendants, to promote such hatred of plaintiffs and other members of their class that they will be physically attacked by the protected political opponents if they dare to visit the City of Portland to exercise their federally-protected rights of free speech and the right to peaceably assemble, in order to bar them and members of their class from any appearance in Portland.

Unlike Paragraph 254, Paragraph 255 sounds in *Monell* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (requiring proof of a policy, custom, or practice to maintain a § 1983 claim against a local government). Although these paragraphs actually name parties against whom Plaintiffs make various claims, it is not clear whether the three subparagraphs are instances of the claims made in Paragraph 254, or whether these are free-standing *Monell* claims. If it is the latter, Plaintiffs should identify the policies or identify the paragraphs in the complaint where the policies are mentioned, and the *Monell* claims should be set forth as a separate claim. Further, it is not clear that the Defendants identified in subparagraphs (a) through (c) had

authority to establish the policies. Traynor, for example, is a police detective. Is he a policymaking official for the City of Portland? Are deputy district attorneys policymakers for Multnomah County or MDCA? Proper allegations would set forth the elements of a *Monell* claim, clarifying the claim for Defendants and the court; they would also allow Defendants to test Plaintiffs' claim in a motion to dismiss under Rule 12(b)(6). Questions about who can make policy for a governmental entity are critical to *Monell* liability. *See generally McMillian v. Monroe Cnty.*, 520 U.S. 781 (1997) (discussing whether the sheriff was a policymaker for the county or the state). And despite identifying the players, Plaintiffs have only listed multiple purportedly unconstitutional actions without stating how the named parties took those unconstitutional actions.

Plaintiffs suggest that requiring them to tether facts to legal theories, as opposed to "realleging" every fact in each claim for relief, would render their pleading neither short nor plain. In effect, they argue that this would so multiply the complaint as to violate the rule against prolixity. *See*, *e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) ("[T]he very prolixity of the complaint made it difficult to determine just what circumstances were supposed to have given rise to the various causes of action."); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) ("Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations."); *see also Mumm v. Jacob E. Decker & Sons*, 301 U.S. 168, 170 (1937) ("The purpose of the Equity Rules [adopted in 1912] was to simplify equity pleading and practice, and with respect to the former to dispense with prolix and redundant averments which had made equity

pleading an outstanding example of unnecessary elaboration."). We think this misunderstands the rules. The touchstone of Rule 8 is to provide notice of the entitlement to relief. *Starr*, 652 F.3d at 1212. Factual allegations, however detailed, must be tied to corresponding causes of action. Plaintiffs may do so in a short and plain manner, but it must be in a manner that actually gives Defendants notice of the claim. Moreover, we do not think Plaintiffs need to reallege the facts verbatim. That is one purpose for Rule 10(b), which anticipates that matters previously plead may be incorporated by reference. For instance, we would not quarrel with the instant complaint if it incorporated by reference *specific* paragraphs of facts into *specific* claims for relief. If the complaint did that, we would be able to understand who took what actions.[11]

*Second Claim for Relief: § 1985.* The Second Claim for Relief includes just two paragraphs, one realleging every preceding paragraph of the complaint, including the First Claim for Relief, and another, Paragraph 258, stating

---

[11] The Supreme Court's decision in *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam), offers Plaintiffs no respite. In *Johnson*, the Fifth Circuit had dismissed a complaint merely for not citing § 1983 by name. The Supreme Court summarily reversed. *Id.* at 10. In so doing, the Court recognized that *Twombly* and *Iqbal*'s plausibility pleading standard applied to factual allegations, not legal theories. *Id.* at 12. All that plaintiffs were missing was "a citation to § 1983." *Id.*

We have more systemic problems here. Plaintiffs identified detailed facts in one section and the conclusory legal theories in another; the link between them is missing. Thus, unlike *Johnson*, we do not dismiss for failure to call a specific legal theory by its name. *See id.* Instead, we dismiss because Plaintiffs have failed to tie their factual allegations to a legal theory that demonstrates an entitlement to relief. Because of that, neither Defendants nor the district court had adequate notice of the facts supporting each legal claim.

verbatim: "Defendants conspired to deprive plaintiffs of federally-protected rights as alleged above, and at least one of the conspirators did an overt act in furtherance of the conspiracy, which did injured [sic] plaintiffs in their person and property and deprived them of rights and privileges of American citizens." Section 1985 of Title 42 of the United States Code provides a cause of action for conspiracy to interfere with civil rights. It has three distinct subsections addressing distinct conspiracies: preventing a state officer from performing his duties, § 1985(1); deterring by force, intimidation, or threat a party, witness, or juror, § 1985(2); and going in disguise to deprive a person of their equal protection of the laws or "equal privileges and immunities under the laws," § 1985(3). *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) (setting out the elements of a cause of action under § 1985(3)).

For the same reasons as the First Claim for Relief, Paragraph 258 is insufficient. For starters, the complaint does not even identify the subsection or subsections of § 1985 under which Plaintiffs are suing. Are they alleging a conspiracy to violate each of the three subsections of § 1985? As with the First Claim for Relief, Paragraph 258 refers globally to "Defendants" without identifying specific actors. Is there a single conspiracy here? Are all of the Defendants participants? The complaint alleges that "at least one of the conspirators did an overt act" but does not identify either the conspirator or the overt act.[12] There are a number of state actors who feature prominently in the complaint,

---

[12] To be sure, the complaint is replete with references to conspiracies. Indeed, in the fact section, Plaintiffs have subtitled one section "Further Overt Acts in Furtherance of the Conspiracy," and another "Further Conduct in Furtherance of the Conspiracy."

including actors who are not named as Defendants, such as Mayor Wheeler and Portland Police Chief Danielle Outlaw. Are they members of the conspiracy? Did either of them commit the overt act complained of? How is a defendant or a court to assess a plaintiff's allegations if we do not know who did what and, instead, are offered only "unadorned, the-defendant-unlawfully-harmed-me accusation[s]"? *Iqbal*, 556 U.S. at 678. The Second Claim for Relief must be repleaded to identify the allegedly offending parties by name, their allegedly unconstitutional actions by something more than reference to the entire complaint, and the legal basis for their claim under § 1985.

*Third Claim for Relief: § 1986.* The Third Claim for Relief realleges all the prior paragraphs and then states: "Defendants had knowledge of the wrongs to be committed, had it within their power to prevent or aid in preventing the commission of the same, but failed to do so, in violation of 42 U.S.C. § 1986." Section 1986 supplies a cause of action against a person who knew of the conspiracy mentioned in § 1985 and "having power to prevent or aid in preventing the commission on the same, neglects or refuses so to do." 42 U.S.C. § 1986.

We think we have adequately made our point. As with the Second Claim for Relief, we have no idea whether "Defendants" means *all* of the Defendants or some of the Defendants. Are Plaintiffs alleging that even the government entities are "persons" who had power to prevent injury under § 1985?

*Fourth Claim for Relief: State Torts.* The Fourth Claim for Relief, identifying two counts and one "alternative count" under state tort law, follows the same form. It alleges malicious prosecution, false arrest and imprisonment, and

negligence.  It alleges in Paragraph 262, for example, that "Defendants insisted upon the initiation and continuance of criminal proceedings against plaintiffs, which ultimately terminated in plaintiffs' favor, had malice instituting such proceedings, and did so without probable cause for doing so."  This claim has greater detail with respect to the elements of a malicious prosecution claim under Oregon law. *See Miller v. Columbia Cnty.*, 385 P.3d 1214, 1223 (Or. Ct. App. 2016).  But it merely realleges all the prior paragraphs and continues to refer to "Defendants" without identifying which defendants are responsible for the alleged tort.  For the reasons that the first three claims for relief failed, so does the fourth.

### 3.  Repleading

We conclude that the failures of the complaint should be corrected.  Absent a Rule 8-compliant pleading, we are left to speculate about the causes of action pleaded by Plaintiffs.  Doing so would be improper except, as explained in the prior section, in circumstances where we can surmise that Plaintiffs are pleading claims implicating immunities from suit that warrant prompt adjudication.[13]

Accordingly, we hold that Plaintiffs' complaint violated Rule 8, and the district court acted within its discretion in dismissing the complaint on this ground.  Because we have clarified the standards for adducing shotgun pleadings, Plaintiffs should have an opportunity to replead their

---

[13] We do not, as the dissent suggests, hold that "future courts applying the shotgun pleading rule . . . must evaluate issue-by-issue which matters are appropriately resolved despite an invalid pleading and which are not."  Dissenting Op. at 73.  Rather, as we have discussed, an otherwise invalid pleading that implicates *immunities from suit* presents a unique circumstance warranting early resolution of those issues.

complaint, consistent with these standards and the prior section concerning immunity from suit. We affirm the judgment of the district court dismissing the complaint but reverse with respect to the court's decision to dismiss certain claims with prejudice. Subject to the limited dismissals articulated below, Plaintiffs may replead their complaint to comply with Rule 8.[14]

## IV. CONCLUSION

We **AFFIRM** the district court's dismissal with prejudice of all claims against MCDA on the basis of sovereign immunity. We **AFFIRM** the district court's dismissal with prejudice of all claims against District Attorneys Underhill and Schmidt on the basis of absolute prosecutorial immunity. We **AFFIRM** the district court's dismissal with prejudice of all claims against Deputy District Attorney Hughey on the basis of absolute prosecutorial immunity. We **REVERSE** the district court's dismissal of the claims against Deputy District Attorney Kalbaugh, against whom Plaintiffs may replead their claims related to his allegedly false affidavits. We **REVERSE** the district court's dismissal with prejudice of Plaintiffs' claims against

---

[14] The dissent's concern that our holding today will somehow result in an additional and unnecessary appeal on the "substantive issues that the district court has already decided" is unwarranted. Dissenting Op. at 58, 76. Despite discussing the merits of Plaintiffs' claims, the district court dismissed many of those claims *without* prejudice and expressly granted Plaintiffs the opportunity to replead them. And the dissent does not argue that these dismissals should have instead been with prejudice. In other words, regardless of whether we affirm those dismissals on the merits or on Rule 8 grounds, Plaintiffs will still have an opportunity to replead those claims, the district court will again have to rule on them, and Plaintiffs may again choose to appeal them to this court.

Multnomah County to the extent they are based on Multnomah County's own acts or omissions.

We **AFFIRM** the district court's judgment that the complaint is otherwise inadequate under Rule 8, but **REMAND** to permit Plaintiffs to replead their claims as follows:

(1) Against Deputy District Attorney Kalbaugh, Plaintiffs may replead all claims related to his allegedly false affidavits.

(2) Against Multnomah County, Plaintiffs may replead all claims to the extent they are based on Multnomah County's own acts or omissions.

(3) Against Detective Traynor, Plaintiffs may replead all claims to the extent they do not arise from his grand jury testimony.

(4) Against the City of Portland, Plaintiffs may replead all claims.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.**

FORREST, Circuit Judge, concurring in part and dissenting in part.

The majority errs in *sua sponte* adopting the "shotgun pleading" rule. It is both unnecessary to resolve this case and unwise. None of the parties advocated for this rule, and the pleading requirements in the Federal Rules of Civil Procedure are sufficient as written. Rather than meddling with pleading requirements, we should have focused on the arguments that the Defendants pressed and that the district court decided.

To be clear, I agree with the majority on the following points: (1) the Multnomah County District Attorney's Office and its employees (Prosecutor Defendants) have immunity except as relates to the allegations that Deputy District Attorney Brad Kalbaugh filed a false affidavit when he applied for an arrest warrant; (2) the claims asserted against Multnomah County, which are all based on the immune acts of the Prosecutor Defendants, necessarily fail; and (3) Portland Police Detective Christopher Traynor has immunity in relation to his grand-jury testimony. But because the majority remands several of Plaintiffs' claims for repleading under its new shotgun-pleading rule, it does not address other arguments that Defendants raised in seeking dismissal of Plaintiffs' complaint. I would reach those additional issues.

Below, I address both why we should not adopt the shotgun-pleading rule and how I would resolve the issues that the majority sidestepped. On the latter point, I would hold that the district court (1) correctly dismissed the state-law malicious-prosecution claims brought against the City Defendants because Plaintiffs failed to allege that pressure exerted by the City was the determining factor in the District

Attorney's Office's decision to prosecute Plaintiffs, and
(2) erred in dismissing the federal-law claims asserted
against the City Defendants as untimely.

## A. "Shotgun Pleadings"

The majority's *sua sponte* adoption of the shotgun-
pleading rule is error for at least two reasons. First, this rule
is not before us. No party relied on it or asked us to adopt it.
Federal Rule of Civil Procedure 8 and the adequacy of the
pleading was also extraneous to the district court's decision.
*See Bautista v. Los Angeles County*, 216 F.3d 837, 842–44
(9th Cir. 2000) (Reinhardt, J., concurring separately)
(faulting the lead opinion for producing a "general
educational guide" about pleading rules when no party
requested one, and the district court did not rely on pleading
rules in dismissing the case). Indeed, the majority's
intervention here creates a substantial likelihood (if not
certainty) that Plaintiffs will appeal again raising the same
substantive issues that the district court has already decided,
and that are currently presented for our decision. Second, to
the extent a pleadings analysis is warranted here, it should
turn on the text of the Federal Rules of Civil Procedure, not
a new judicially imposed standard.

### 1. Party Presentation

Start with the easiest reason not to embark on the
majority's shotgun-pleadings journey: the parties didn't ask
us to. "As a general rule, our system is designed around the
premise that parties represented by competent counsel know
what is best for them, and are responsible for advancing the
facts and argument entitling them to relief." *United States v.
Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (citation
modified) (reversing this court for drastically exceeding
the issues presented by the parties); *Clark v. Sweeney*, 607

U.S. ---, 2025 WL 3260170, at *1 (Nov. 24, 2025) (per curiam). "Counsel almost always know a great deal more about their cases than we do," *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (citation omitted), and we forego the benefits of our adversarial system when we lose sight of that fact.

There are three groups of defendants here: the Prosecutor Defendants, Multnomah County, and the City Defendants. Only one of these groups—the Prosecutor Defendants—raised a pleading challenge. And in doing so, they relied only on the text of Rule 8; the idea of shotgun pleading is absent from their arguments.

The district court on its own referenced the concept of shotgun pleadings in concluding that Plaintiffs' allegations against the Prosecutor Defendants failed to satisfy Rule 8(a)(2), but it did not base its dismissal of Plaintiffs' complaint on pleading grounds, shotgun or otherwise. Rather, it granted the Prosecutor Defendants' motion to dismiss based on Eleventh Amendment and prosecutorial immunity. And it did not permit repleading on any of the claims asserted against these Defendants "because amendment would not cure the defects." So, as far as I can tell, the district court's Rule 8 evaluation did not contribute to its final judgment. This is not a record that invites us to consider the shotgun-pleading rule.

The majority disagrees, asserting that the parties' failure to discuss shotgun pleadings "does not prevent us from addressing the substance of the district court's ruling and the parties' arguments." Maj. Op. 36 n.9. This does not make sense because, as just explained, the substance of the district court's ruling on the claims asserted against the Prosecutor Defendants was immunity. And the adequacy of Plaintiffs'

allegations does not go to the substance of any of the other Defendants' arguments because they did not raise this issue.

The party-presentation principle of course does not hamstring courts from "identify[ing] and apply[ing] the correct legal standard, whether argued by the parties or not." *In re Nance*, 156 F.4th 961, 969 (9th Cir. 2025) (citation omitted); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). But *identifying* law that the parties missed is different from *creating* new law that the parties didn't ask for. *See Sineneng-Smith*, 590 U.S. at 376 ("Courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right.") (citations omitted); *see also Zakora v. Chrisman*, 44 F.4th 452, 486 (6th Cir. 2022) (Sutton, C.J., concurring in part and dissenting in part) ("[A] case is not a Greek play in which all-seeing judges, unbidden, come to the rescue by creating solutions that the parties do not seek."). The latter is what the majority does here. The majority cannot be right in saying both that the federal rules are synonymous with the shotgun-pleading rule and that we need to adopt a new shotgun-pleading rule. *Compare* Maj. Op. at 37 *with id.* at 43. The federal rules either include the shotgun-pleading rule that the majority adopts or they do not. And as I explain below, they do not.

Finally, even if one were inclined to stretch the adversarial principles that animate the party-presentation principle to decide an unaddressed issue of law, there are important reasons not to do so here. *Sua sponte* development of law is inherently problematic because anytime a court ventures beyond the issues presented by the parties there is a risk of unfairness. *Cf. Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999) ("[P]roviding the adversely affected party with notice and an opportunity to be heard plays an

important role in establishing the fairness and reliability of the order."); *see also United Ass'n Local 38 Pension Tr. Fund v. Aetna Cas. & Sur. Co.*, 790 F.2d 1428, 1432 n.3 (9th Cir. 1986) (Norris, J., concurring in part and dissenting in part) (pointing out that Ninth Circuit General Order 4.2, which requires panels to give "serious consideration" to additional briefing when raising new issues, "protects the integrity of the adversary process by ensuring that each party has a full and fair opportunity to address the relevant issues."). For example, Plaintiffs may have worthy counterarguments to the propriety of the shotgun-pleading rule that, if presented, could aid the court in making a fully informed decision. But Plaintiffs had no reason to raise those arguments where none of the Defendants advocated for the shotgun-pleading rule.[1]

The majority's freelancing in the context of pleading rules is also concerning. If it were developing a substantive area of law, any missteps might be confined to like cases. But pleading rules affect each of the roughly 50,000 civil cases filed in the district courts in our circuit every year.[2] This context should counsel caution, not spontaneous legal developments without full adversarial testing. After all, we "do not sit as self-directed boards of legal inquiry and research." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.).

---

[1] The majority observes that district courts within this circuit regularly apply a shotgun-pleading rule. *See* Maj. Op. 43–44 & n.10. If that is true, then it should be easy enough to wait for an appropriate case to test the validity of this rule.

[2] *See* United States Courts, *U.S. District Courts–Civil Federal Judicial Caseload Statistics* (Mar. 31, 2024), https://www.uscourts.gov/data-news/data-tables/2024/03/31/federal-judicial-caseload-statistics/c-1 [https://perma.cc/8VS4-M549].

## 2.  Substantive Concerns

I hesitate to discuss the merits of the shotgun-pleading rule when there has been no adversarial presentation on this issue, but I am compelled to because the majority fully embraces the rule. My concerns largely boil down to this: the Federal Rules of Civil Procedure, as written, are sufficient, and the shotgun-pleading rule undermines some of the purposes animating those rules. The majority's reasoning for adopting this rule is also flawed.

### a.

Federal Rule of Civil Procedure 8 provides the governing pleading standard. A claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). "No technical form [of pleading] is required." Fed. R. Civ. P. 8(d)(1). Rule 8 is buttressed by Rule 10, which allows incorporation by reference, Fed. R. Civ. P. 10(c), and instructs that "each claim founded on a separate transaction or occurrence" be stated in a separate count when "doing so would promote clarity," Fed. R. Civ. P. 10(b). Rounding things out is Rule 12(e), which allows a responding party to seek a more definite statement when a

pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513–14 (2002) (interpreting "Rule 8(a)'s simplified notice pleading standard" in the context of its "inextricabl[e] link[]" with Rule 12(e)).

I just recounted the most salient pleading rules in one paragraph. That is not an accident. The pleading standards codified in the Federal Rules of Civil Procedure departed from a byzantine code-pleading era in which "one misstep by counsel" could be outcome-determinative, regardless of the merits. *See id.* at 514 (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Congress thought it wise to shed the complexities of the old regime, and it ushered in more straightforward notice pleading. *Id.*; *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011).

Simply put, the Federal Rules establish that, subject to a few broad constraints, a complaint should be judged on its merits rather than its form. *Swierkiewicz*, 534 U.S. at 514; *Starr*, 652 F.3d at 1212. As the Supreme Court recently counseled, it has "consistently rejected" efforts by "lower federal courts . . . to require more information" than what is directed by Rule 8's plain text. *Berk v. Choy*, No. 24-440, 2026 WL 135974 at \*4 (U.S. Jan. 20, 2026). So long as a complaint "give[s] notice of the claim such that the opposing party may defend himself or herself effectively," litigation may proceed. *Starr*, 652 F.3d at 1212.

The shotgun-pleading rule defies the underlying notice-pleading principle that guided Congress and that is reflected in the Rules that Congress enacted. The rule also seems destined to be another example of "the problems that arise

when judges create atextual legal rules and frameworks." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 313 (2025) (Thomas, J., concurring). Such enterprises "have a tendency to distort the underlying statutory text, impose unnecessary burdens on litigants, and cause confusion for courts." *Id.* The majority's motivation for augmenting the existing rules demonstrates the point.

The majority reasons that "the problem with shotgun pleadings is that they make it difficult, if not impossible, for the opposing party to formulate a response." Maj. Op. 39–40. I do not dispute that nebulous pleading can thwart orderly and efficient litigation. But there is no need to "fix" this problem by establishing a new pleading rule. The existing rules do the necessary work while also giving fidelity to our adversarial system. Consider Rule 12(e). The relief it affords—requiring the pleading party to provide more specificity and clarity—must be *party* driven.[3] The party seeking clarification of a pleading also "*must* point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e) (emphasis added). Unlike other motions provided for in the Rules, there is no provision for a court to

---

[3] The current language of Rule 12(e) reflects the trend towards simplified notice standards for the pleadings. As originally enacted, defendants could move for a bill of particulars, which would become part of the pleadings. *See* Fed. R. Civ. P. 12(e) (1937); *see also Bill of Particulars*, Black's Law Dictionary (12th ed. 2024) ("A formal, detailed statement of the claims or charges brought by a plaintiff."). That allowance became "the subject of more judicial rulings than any other part of the rules, and [was] much criticized by commentators, judges and members of the bar," not the least of which because it "served to neutralize any helpful benefits derived from Rule 8." Fed. R. Civ. P. 12(e) advisory committee's note to 1946 amendment. Unsurprisingly, then, the bill of particulars was cast aside less than a decade after the Rules were first adopted. *See* Fed. R. Civ. P. 12(e) (1946).

*sua sponte* direct a more definite pleading. *Compare id.*, *with* Fed. R. Civ. P. 12(f) (motion to strike), *and* Fed. R. Civ. P. 16 (pretrial conferences), *and* Fed. R. Civ. P. 56(f)(3) (motion for summary judgment).

Some courts that have adopted the shotgun-pleading rule honor the adversarial aspect of these procedural requirements. For example, in *Anderson v. District Board of Trustees. of Central Florida Community College*, the Eleventh Circuit concluded that the plaintiffs' complaint was an impermissible shotgun pleading. 77 F.3d 364, 366 (11th Cir. 1996). But because the defendant chose not to seek a more detailed statement of the plaintiff's allegations "as a matter of strategy," the court proceeded to consider the merits of the district court's ruling on the defendant's immunity arguments. *Id.* at 367. Concluding that it could not make enough sense of the plaintiff's allegations to determine whether the defendant was protected by immunity, the court affirmed the district court's denial of the defendant's motion for summary judgment. *Id. But see Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 984 (11th Cir. 2008) (stating that where the defendant failed to seek a more definite statement, the district court should have done so *sua sponte*). Similarly, in *Lee v. Ohio Education Association*, the Sixth Circuit concluded that the plaintiff's complaint was an improper shotgun pleading. 951 F.3d 386, 393 (6th Cir. 2020). But it also addressed the substance of the plaintiff's claim because the defendant had not sought to clarify the pleadings and instead moved to dismiss. *Id.*

The majority's application of the shotgun-pleading rule is not faithful to basic adversarial principles. And its concern about responding parties being able to defend themselves falls flat here. Each Defendant moved to dismiss the claims asserted against it after identifying specific deficiencies in

the Plaintiffs' allegations. None of the defendants thought it necessary to request a more definite statement of the allegations against them. Even though I agree that Plaintiffs' complaint is not a model for others to follow, the Defendants' choice not to seek relief under Rule 12(e) is also not surprising. As the majority concedes, Plaintiffs laid out the facts underlying their claims in capacious detail. We can only assume that Defendants made a strategic choice to pursue dismissal rather than repleading, which paid off in the district court where their motions were all granted. We should have respected their litigation choices and simply resolved the grounds for dismissal that they advanced.

It is concerning that the majority not only ignores the procedure established by the Civil Rules and Defendants' litigation choices but further uses this case as an "opportunity to make clear that district courts do not have to accept such shotgun pleadings." Maj. Op. 42. That is, the majority instructs district courts that they also need not respect parties' litigation choices or the adversarial principles embedded in the Rules.

The majority roots its lesson for the district courts in their inherent authority to control their dockets. *See id.* 42–45. The majority also repeatedly cites Rule 1, which directs courts "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. While district courts do "have inherent power to control their dockets," that power cannot "nullify the procedural choices reserved to parties under the federal rules." *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). This makes significant that Rule 12(e) gives only parties the ability to seek clarification of the pleadings, unlike other rules that provide for *sua sponte* court intervention. *See* Fed. R. Civ. P. 12(f), 16, 56(f)(3). Simply

put, a court's inherent authority is not a grant of power to do all things one might consider a good idea in managing or resolving cases. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."); *see also id.* at 47 ("[T]he exercise of the inherent power of lower federal courts can be limited by statute and rule.").

## b.

The majority identifies specific categories of shotgun pleadings that it deems invalid. These categories further demonstrate that the majority's new standard is divorced from the Rules.

### i.   Multiple Theories in a Single Count

The majority first concludes that Plaintiffs' complaint must be dismissed as a shotgun pleading because it asserts claims that encompass disparate legal theories within a single count. *See* Maj. Op. 47. For example, Plaintiffs assert one 42 U.S.C. § 1983 claim that includes theories based on the First Amendment, various provisions of the Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment.

Rule 10(b) addresses the proper use of counts. If it "would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.* The transaction-or-occurrence test focuses on the "similarity in the *factual* background of a claim" and whether a claim "arise[s] out of a systematic pattern of events." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.

1997) (emphasis added).[4] We apply this test flexibly, liberally construing what constitutes the same transaction or occurrence. For example, in *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246 (9th Cir. 1987), we held that an insurance company's claims against its former employee for breach of an employment contract and intentional interference with business relations based on the employee's alleged theft of client lists arose out of the same transaction or occurrence as the employee's counterclaims for defamation based on the company calling him "a crook." *Id.* at 1250–51.[5] It did not matter that the alleged defamation was "a bit removed" from the insurer's attempt to stop the employee from using the customer records, or that the legal elements for the various claims were different. *Id.* It was enough that the alleged facts were "intertwined." *Id.* at 1250.

Although Plaintiffs here list disparate legal theories, they arise out of the same factual background: the allegation that local government actors in Portland acted in various unlawful ways to punish Plaintiffs for their role in the Cider Riot incident and other protests and that those actions deprived Plaintiffs of their civil rights. Because the multiple constitutional violations referenced in the Plaintiffs' § 1983

---

[4] *See also* 5A *Wright & Miller's Federal Practice & Procedure* § 1324 (4th ed. 2025) ("[I]t seems reasonably clear that Rule 10(b) does not make it necessary to use separate counts to state different theories of recovery or to seek relief under separate statutory provisions." (footnote omitted)); 35A *C.J.S. Fed. Civ. P.* § 310 (2025) ("Where a series of acts are alleged to be part of a plan to injure the plaintiff, a separation into counts is not necessary to facilitate the clear presentation of the matters set forth.").

[5] Although *Pochiro* concerned a state rule of civil procedure, it was modeled verbatim after the federal rule and we interpreted it in lockstep with the federal transaction-or-occurrence test. 827 F.2d at 1249–50.

claim are based on a common factual background, the Rules do not prohibit this claim from being stated in a single count. The majority's requirement that Plaintiffs "put[] each legal theory in a separate count is a throwback to code pleading, perhaps all the way back to the forms of action." *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 291–92 (7th Cir. 1992). And by supplementing Rule 10's transaction-or-occurrence test with a legal-theory test for when separate counts are required, the majority runs afoul of the *expressio unius* canon. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 107–11 (2012) ("[S]pecification of the one implies exclusion of the other."). Where Congress has specified when claims must be listed as separate counts, we should not add to its work.

The majority's requirement that each legal theory be stated as a separate count also creates tension with Rule 8(d)(2), which allows parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R Civ. P. 8(d)(2). That is, a plaintiff advancing different liability theories can choose whether to do so in separate counts or the same count. The majority's rule takes that choice away.

### ii.   Tying Facts to Law

Next, the majority faults Plaintiffs for not providing even "threadbare recitals of the elements of a cause of action." Maj. Op. 47 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This is backwards. *Iqbal* said that threadbare recitals of the elements of a cause of action are *insufficient*; there is no basis in Supreme Court (or any other) precedent to conclude that such recitals are *required*. *See Iqbal*, 556 U.S. at 678; *see also Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam) (discounting the relevance of

*Twombly* and *Iqbal* to the non-factual requirements of a complaint).

The critical aspect of a complaint lies in the facts it alleges, not the law that it recites. *See* 35A *C.J.S. Fed. Civ. P.* § 311 (2025) ("Well-pleaded facts, not legal theories or conclusions, determine the adequacy of a complaint."). "Conspicuously absent from Federal Rule of Civil Procedure 8(a)(2) is the requirement found in the codes that the pleader set forth the 'facts' constituting a 'cause of action.'" 5 *Wright & Miller's Federal Practice & Procedure* § 1216 (4th Ed. 2025). The majority's requirement that "[f]actual allegations, however detailed, must be tied to corresponding causes of action," Maj. Op. 51, makes little sense when the Rules do not require legal theories to be set out in any particular form. *See id.*; *Johnson*, 574 U.S. at 11–12. By reintroducing the requirement that specific legal theories must be tied to specific facts as a matter of pleading, the majority risks reintroducing the "unfortunate rigidity and confusion" that the Rules Committee and Congress abandoned when they swapped code pleading for notice pleading. *Wright & Miller* § 1216; *NAACP*, 978 F.2d at 292.

### iii. Multiple Defendants in a Single Count

The majority protests that Plaintiffs included multiple defendants in a single count. Maj. Op. 47. Again, Rule 10(b) governs the proper designation of counts. Separation by defendant is not required. *See also Wright & Miller* § 1324 (clarifying that Rule 10(b) does not require separate counts against multiple defendants). So once more, the majority's shotgun-pleading rule judicially amends Rule 10(b) to require more than it says.

It is important not to confuse the form of the complaint with the underlying substance. If a plaintiff alleges that a

group of defendants deprived him of his civil rights in violation of § 1983, dismissal for imprecise pleading is likely unwarranted even if the complaint fails to specify the action taken by each individual defendant. *Contra* Maj. Op. 47. But if an individual defendant cannot identify from the facts pled any plausible allegation that he violated the plaintiff's civil rights, that defendant can move to dismiss under Rule 12(b)(6). In fact, I would dismiss Plaintiffs' complaints against Multnomah County on precisely this basis. *See infra* Part B.1.

### iv. Over-Incorporation

Although the majority does not base its decision on this point, it identifies as a category of impermissible shotgun pleading "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint." Maj. Op. 39 (quoting 35A C.J.S. § 310 (2025)); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) (identifying this as the most common type of shotgun pleading). Presumably, the majority should reject Plaintiffs' complaint on this ground as well. After all, each of Plaintiffs' claims indiscriminately reincorporate every preceding paragraph. But however sloppy, no competent lawyer would assume this inartful incorporation means that Plaintiffs actually intended to incorporate prior claims into later claims. At a certain point, common sense must prevail. *Cf. Swierkiewicz*, 534 U.S. at 514 ("The Federal Rules reject the approach that pleading is a game of skill." (quoting *Conley*, 355 U.S. at 48)). Perhaps that is why the majority does not apply this limitation to this case.

**c.**

Finally, I briefly touch on some of the additional weaknesses in the majority's reasoning for adopting the shotgun-pleading rule.

First, it is incorrect that we have already addressed "the relationship between shotgun pleadings and Rule 8," s*ee* Maj. Op. 40 (citing *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011)). *Destfino* referenced "shotgun pleading" only in recounting how the district court characterized the Plaintiffs' complaint. 630 F.3d at 958. Our analysis in that case focused on whether dismissal should have been with or without prejudice. *Id.* at 958–59. Make no mistake, the steps the majority takes today are neither compelled nor counseled by anything we have done in the past. *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("if a prior case does not raise or consider the implications of a legal argument, it does not constrain our analysis" (quotation omitted)).

Second, there is also no reason to follow the Eleventh Circuit's atextual approach to pleadings, on which the majority leans. *Cf.* Maj. Op. 41 ("The Eleventh Circuit has been the most vocal of the circuits."). The concept of shotgun pleading first surfaced in that court in a footnote in a dissent. *See T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting). A few years later, that dissenting judge conveniently imported the idea into a majority opinion. *Cole v. United States*, 846 F.2d 1290, 1293 & n.4 (11th Cir. 1988). But the analysis supporting the importation was also confined to a footnote declaring: "The Federal Rules of Civil Procedure condemn [shotgun] pleadings." *Id.* Now the shotgun pleading rule is

firmly rooted in the Eleventh Circuit despite its wily origins.[6]

Third, much of what the majority categorizes as Rule 8 deficiencies are really contentions that Plaintiffs failed to state a claim. For example, the majority states that Plaintiffs did not sufficiently allege the individuals who acted on behalf of the County and the City had policymaking authority, as required to establish *Monell* liability. Maj. Op. 49–51. If Plaintiffs failed to allege sufficient facts to satisfy each element of a claim for relief, that is reason to dismiss for failure to state a claim. *See Iqbal*, 556 U.S. at 677–80. It is not a reason to *sua sponte* adopt the shotgun-pleading rule and require repleading.

Fourth, the majority's selection of which issues to resolve, despite what it views as an indecipherable shotgun pleading, and which issues to sidestep pending repleading is also confusing. While it addresses the immunity defenses, it declines to address the statute-of-limitations defense despite the extensive factual allegations that identify the timing of

---

[6] Forty years on, the Eleventh Circuit occasionally seems dubious of its experiment. As one opinion put it:

> *T.D.S.* was this Court's first shot in what was to become a thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight. Some of our shooting, which has mostly been done with nonlethal dicta, has at times been nearly as lacking in precision as the target itself. At times we have used the term "shotgun pleading" to mean little more than "poorly drafted complaint."

*Weiland*, 792 F.3d at 1321 (11th Cir. 2015) (footnotes omitted). Revisiting Justice Thomas's warning, this judge-made framework has created confusion for at least one court and now seems poised to do so for ours. *See Ames*, 605 U.S. at 313 (Thomas, J., concurring).

the events at issue. Future courts applying the shotgun-pleading rule apparently must evaluate issue-by-issue which matters are appropriately resolved despite an invalid pleading and which are not, and the majority gives them no discernable standard for conducting that evaluation, other than to say that "[i]t will require judgment." Maj. Op. at 43. I can only expect that district courts will brandish the shotgun-pleading rule in a blunderbuss fashion, with different courts and judges reaching unpredictable and inconsistent results.

Finally, the majority suggests that its new rule can improve efficiency "from a judicial policy perspective." Maj. Op. 44. Even if true, that concern is properly directed to the Rules Committee and Congress. The "simplified notice pleading standard" that Rule 8 codified "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. No doubt efficiencies could be gained from narrowing the scope of issues before discovery. But the Rules do not provide for this except in narrow circumstances, *e.g.* Fed. R. Civ. P. 9(b), the Supreme Court likewise has been circumspect about establishing heightened pleading requirements, *see Starr*, 652 F.3d at 1213–15, and the prior regime of code pleading shows the downsides of such attempts. We should not take it upon ourselves to impose additional requirements to narrow a dispute at the pleading stage simply because we think the standard that Congress ratified is too permissive.

A key point of my disagreement with the majority concerns who intends to benefit from Rule 8's pleading standard. I view this pleading standard as benefiting responding parties, which is consistent with Rule 12(e) giving only parties a tool for clarifying the pleadings. *See*

Fed. R. Civ. P. 12(e). The majority, on the other hand, views the pleading standard as also benefitting courts and that the shotgun-pleading augmentation is necessary to "prevent[] the needless expenditure of finite judicial resources." Maj. Op. 44.

The majority's perspective overlooks that courts are in a different position than parties when faced with uncertainty in the pleadings. Courts need not save the parties from themselves or waste resources making the pleadings into something they are not. *See Sineneng-Smith*, 590 U.S. at 374–76, 379–80. As the Eleventh Circuit's decision in *Anderson* demonstrates, if a court is unable to fairly decide a substantive issue because the pleadings are unclear, it can say so and rule accordingly. *See* 77 F.3d at 368 ("The consequence of our being unable to determine whether the district court should have granted appellants immunity is that we affirm the district court's denial of immunity."). And when courts do this, the responding parties must live with their choice to proceed with deficient pleadings and maybe reassess their strategy. But either way, the court's role is to decide only the issues the parties present. *See Sineneng-Smith*, 590 U.S. at 379–80; *see also Clark*, 607 U.S. ---, 2025 WL 3260170, at *1.

Ironically, *sua sponte* requiring repleading and sidestepping the substantive issues on which the district court granted dismissal makes this already complicated case even more complicated, undermining Rule 1's goals. Consider the various grounds on which the district court dismissed Plaintiffs' complaint. The claims asserted against the Prosecutor Defendants, except for Kalbaugh, were dismissed with prejudice on immunity grounds. The claims asserted against Multnomah County were dismissed because the district court concluded, as we do, that the District

Attorney's Office and its employees are state actors, for which the County is not responsible. And the claims asserted against the City Defendants were dismissed as time-barred, except that the district court held that Detective Traynor has immunity for any claims arising out of his grand-jury testimony and that Plaintiffs failed to state a claim for state-law malicious prosecution against Traynor or the City.

The majority hardly acknowledges the district court's reasoning as to the County and City Defendants. Why? Assuming Plaintiffs dutifully file an amended pleading on remand that satisfies the new shotgun-pleading rule, the district court is likely to dismiss at least some of Plaintiffs' claims for the same reasons that it did initially. There is no reason to think that the district court will evaluate these substantive issues differently where the majority offers no guidance on them.

As Justice Scalia put the point, "I am frankly not enamored of any departure from our traditional adversarial principles. . . . But if departure from traditional adversarial principles is to be allowed, it should certainly not occur in any situation where there is a risk that the patronized litigant will be harmed rather than assisted by the court's intervention." *See Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment). By sidestepping many of the substantive issues on which Defendants prevailed, the majority returns them to the pleading stage ostensibly because the complaint was too opaque for them to adequately defend themselves. Defendants didn't think so. And this is precisely the type of consequence that Justice Scalia recognized can result from courts thinking they know what's better for the parties than the parties know themselves. As a result of the majority's decision today, the parties will spend more time and money

only likely to be right back here in the future presenting the same issues they are presenting now. The better practice—and the practice dictated by the Federal Rules of Civil Procedure—is to leave it to the parties to choose their own pleading strategy and let the chips fall where they may.

## B.  Defendants' Unaddressed Arguments

Because I would not resolve any aspect of this appeal on the form of Plaintiffs' pleading, I address the arguments that Defendants raised against the claims asserted against the City Defendants that the majority remands for repleading.[7] The district court dismissed Plaintiffs' federal civil-rights claims against the City Defendants as time-barred. It also held that Detective Traynor is absolutely immune as relates to the federal claims premised on his grand-jury testimony. Finally, the district court dismissed Plaintiffs' state malicious-prosecution claims for failure to state a claim. Relying on its shotgun-pleading analysis, the majority remands so Plaintiffs can replead it claims against the City Defendants. Plaintiffs are not entitled to a mulligan. I would reverse the district court's first holding on untimeliness and affirm the latter two, allowing Plaintiffs to pursue their malicious-prosecution theory—and only that theory.

---

[7] As previously stated, I agree with the majority's disposition of the claims asserted against Multnomah County. And although I am skeptical that Plaintiffs can allege facts against this defendant that are unrelated to any actions or omissions taken by the Prosecutor Defendants where they did not identify any such facts in the plethora of allegations asserted in their First Amended Complaint, I nonetheless join the decision to allow Plaintiffs the opportunity on remand to assert allegations directly related to the County, if they can do so.

## 1. Statutes of Limitations

Many of Plaintiffs' allegations concern events that occurred outside the relevant statutes of limitations. But in their response to the City Defendants' limitations defense, Plaintiffs contend that their § 1983 claim is rooted in a malicious-prosecution theory. So construed, Plaintiffs' §§ 1983 and 1986 claims are timely because they accrued only upon the state court's dismissal of Plaintiffs' criminal charges. Plaintiffs' conspiracy claims against the City Defendants based on overt acts committed by any co-conspirator within the limitations period are also timely.

### a. Section 1983

We apply the forum state's personal-injury statute of limitations to § 1983 claims. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014). Oregon's applicable statute of limitations is two years. Or. Rev. Stat. § 12.110(1); *see also Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). Although the limitations period turns on state law, claim accrual is governed by federal law. *See TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

Most of the City Defendants' allegedly unlawful acts occurred in 2019 or earlier, but Plaintiffs did not file suit until 2023. Plaintiffs do not dispute this. Instead, they argue that their § 1983 claims against these Defendants are "grounded in malicious prosecution" and this claim did not accrue until the criminal charges against them were dismissed in 2022. Plaintiffs are correct.

A necessary element of malicious-prosecution grounded in the Fourth Amendment is the acquittal or discharge of the accused. *See Thompson v. Clark*, 596 U.S. 36, 44 (2022). Here, that did not occur until 2022, which means Plaintiffs'

claim asserted in 2023 is timely. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (per curiam); *accord Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) ("[A] cause of action for malicious prosecution does not accrue until the termination of the criminal proceedings.").

The City Defendants protest that Plaintiffs' complaint did not assert a § 1983 claim based on malicious prosecution.[8] But a plaintiff does not forever bind himself to the legal theories he articulates in his complaint. *See Wright & Miller* § 1219 ("[T]he federal rules—and the decisions construing them—evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage . . . ."). For example, we have allowed a plaintiff who alleged only First Amendment violations to proceed with statutory claims that were advanced in post-pleading filings. *See Alvarez v. Hill*, 518 F.3d 1152, 1157–58 (9th Cir. 2008). Accordingly, because Plaintiffs alleged facts supporting a malicious-prosecution theory and advanced this theory in the district court, I would reverse the district court's dismissal of Plaintiffs' § 1983 claim against the City Defendants.

There are two caveats. First, in deciding whether to allow new legal theories, we must consider whether the change will prejudice the defendant. *See Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980); *Wright & Miller* § 1219. Rarely will a change this early in the proceedings be so prejudicial that dismissal is the appropriate remedy. *See United States v. Howell*, 318 F.2d 162, 166 (9th Cir. 1963) ("A 'complaint is not to be dismissed because the plaintiff's lawyer has

---

[8]The district court did not take up this issue.

misconceived the proper legal theory of the claim.'" (citation omitted)); *Wright & Miller* § 1219 (listing the district court's tools to avert prejudice). But the City Defendants' objection that the complaint led them to focus on constitutional violations other than malicious prosecution is well taken. With Plaintiffs now focusing this claim on malicious prosecution to avoid the time bar, nothing forecloses the City Defendants from challenging this claim on the pleadings on other grounds, if they exist.

Second, even if Plaintiffs are not bound to their initial legal theories, ordinary rules of forfeiture still apply. *See Crawford v. Lungren*, 96 F.3d 380, 389 n.6 (9th Cir. 1996) (declining to consider claims referenced in a complaint when they were not argued by the plaintiffs on appeal). The City Defendants argued that Plaintiffs' § 1983 claim was time-barred, and Plaintiffs disputed this insofar as they alleged malicious prosecution. Malicious prosecution is a distinct constitutional tort grounded in the Fourth Amendment. *See Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024). It appears from Plaintiffs' complaint that they wanted to press other constitutional torts—for example, First Amendment retaliatory arrest. *See Nieves v. Bartlett*, 587 U.S. 391, 401 (2019) (describing the elements of that claim). But where they raised no argument on timeliness other than as to malicious prosecution, I would hold that Plaintiffs have forfeited any other theory. *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 978–99 (9th Cir. 2017). Accordingly, even though I would allow Plaintiffs to proceed with their malicious-prosecution theory, I would not permit them to pursue any other constitutional torts that they failed to establish were timely in response to the City Defendants' motion to dismiss.

### b.  Section 1985

Section 1985 imposes civil liability for conspiring to deprive individuals of their civil rights. *See* 42 U.S.C. § 1985. The limitations period for this claim is the same as for a § 1983 claim. *See McDougal v. County of Imperial*, 942 F.2d 668, 673–74 (9th Cir. 1991). So once again, any claims that accrued more than two years before Plaintiffs filed this lawsuit are untimely. The City Defendants argue that because all their alleged conduct occurred more than two years before Plaintiffs filed suit, the § 1985 claim is time-barred. Plaintiffs counter that, under our last-overt-act doctrine, their § 1985 claim is timely. *See Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986). Plaintiffs are at least partially correct, and I would allow their § 1985 claim to proceed.

The last-overt-act doctrine is based on the premise that "injury and damage in a civil conspiracy flow from the overt acts, not from the mere continuance of a conspiracy." *Id.* (citation modified). Accordingly, a civil-conspiracy statute of limitations "runs separately from each overt act that is alleged to cause damage to the plaintiff." Evidence outside the limitations period may satisfy other elements of a conspiracy claim. *See United States v. Chhun*, 744 F.3d 1110, 1122 (9th Cir. 2014). That is, Plaintiffs may point to pre-2021 events as evidence that the City Defendants joined the conspiracy, but they may only base liability on overt acts that occurred within the limitations period.

While none of the City Defendants' alleged overt acts occurred within the limitations period, these Defendants

misapprehend the nature of conspiracy liability in concluding they are home free. As we have long held,

> [i]f sufficient allegations appear of the acts of *one defendant among the conspirators*, causing damage to plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during its course, in furtherance of the objects of the conspiracy . . . then *all defendants are liable for the acts of the particular defendant* under the general principle of agency on which conspiracy is based.

*Hoffman v. Halden*, 268 F.2d 280, 295–96 (9th Cir. 1959) (emphasis added), *overruled in part on other grounds by Cohen v. Norris*, 300 F.2d 24, 29–30 (9th Cir. 1962). Even if the City Defendants may not be held liable for their own untimely overt acts occurring before 2021, they may be liable for the timely overt acts of their co-conspirators. That is one goal of conspiracy liability. *See id.*; *Rieves v. Town of Smyrna*, 67 F.4th 856, 863 (6th Cir. 2023). And accepting Plaintiffs' factual allegations as true, at least some of the co-conspirators' overt acts, including the 2022 trial pressed by the Prosecutor Defendants, occurred within the limitations period. Because the City Defendants do not present any additional reason for why they may not be held liable for conspiracy under § 1985, Plaintiffs should be allowed to pursue this claim against the City Defendants insofar as liability is premised on the timely overt acts of any member of the alleged conspiracy.

### c. Section 1986

Section 1986 creates a cause of action against defendants that knew of a § 1985 conspiracy, had the power to stop it, and did not. A plaintiff has one year to bring a § 1986 action from the time it accrues. *See* 42 U.S.C. § 1986. This claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1046, 1048 (9th Cir. 2008) (citation omitted). Where the §§ 1983 and 1986 accrual standards are the same, *see TwoRivers*, 174 F.3d at 991, and where § 1983 malicious-prosecution claims accrue at the time of acquittal or dismissal, *see supra* Part B.2.a.i, that also must be the moment § 1986 claims based on malicious prosecution accrue. So again, this claim is timely because the state court dismissed the charges against Plaintiffs within one year of their filing this lawsuit.

The district court held, and the City Defendants maintain, that because Plaintiffs did not allege any acts or omissions by the City Defendants that occurred within one year of the lawsuit being filed, the claim is untimely. That was error. *Lukovsky* makes clear that timeliness for this claim is not based on when the defendant's challenged act or omission occurred; it is when the plaintiff obtained knowledge, actual or constructive, of the injury suffered from the defendant's challenged acts or omissions. 535 F.3d at 1046, 1048. As discussed, that occurred when the charges against Plaintiffs were dismissed.

### 2. State-Law Malicious Prosecution

The district court dismissed Plaintiffs' state-law malicious-prosecution claim against the City Defendants without prejudice because Plaintiffs did not sufficiently allege that these parties instituted, continued, or had an

active role in Plaintiffs' prosecution. I would affirm that dismissal.

Among other requirements, a malicious-prosecution plaintiff must prove that criminal proceedings were initiated or continued "by or at the insistence of the defendant." *Rose v. Whitbeck*, 562 P.2d 188, 190 (Or. 1977). A defendant need not "personally or single-handedly institute the criminal proceeding" but it must have at least "urged or insisted that another" do so. *Id.* at 190–91. However, if a prosecutor decides to bring charges "after an independent investigation and in the exercise of his independent discretion," that supplants others' liability. *Id.* at 191. To overcome this hurdle, the plaintiff must prove that the prosecutorial decision was not truly independent because it was based on false representations by the defendant, or that the defendant's outside pressure was "the determining factor" in the prosecutor's decision to press charges. *Id.* at 192 (citation omitted).

Here, the District Attorney's Office decided to prosecute Plaintiffs. Plaintiffs alleged that the prosecution was "undertaken following pressure from the Mayor and Police Chief." They likewise argue on appeal that Portland's mayor and police commissioner pressured the District Attorney's Office to prosecute Plaintiffs because of their unpopular beliefs. Asserting that City actors exerted pressure is not the same as asserting that such pressure was "the determining factor" in the decision to prosecute. *Id.* (citation omitted).[9]

---

[9] In their reply brief, Plaintiffs briefly argue that Detective Traynor supplied false information to the District Attorney's Office. Because Plaintiffs did not contest the district court's dismissal of their state-law malicious-prosecution claim against Detective Traynor in their opening

This latter assertion is what Oregon law requires, and Plaintiffs' allegations do not meet this requirement.

Plaintiffs observe that "the presumption of prosecutorial independence" does not undermine a federal malicious-prosecution claim against "local officials who improperly exerted pressure on the prosecutor." *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). That may bode well for Plaintiffs' federal claim. But Oregon need not model its malicious-prosecution law on the federal analog.[10]

\* \* \* \* \*

Plaintiffs undoubtedly made this case more complicated by how they chose to plead their claims. But Defendants chose to focus on substantive deficiencies in Plaintiffs' pleading. We should have decided those issues, as the district court did, rather than stepping outside our proper role in the adversarial system to *sua sponte* adopt the shotgun-pleading rule, which itself is at odds with the adversarial principles embedded in the Federal Rules of Civil Procedure.

Therefore, I respectfully dissent in part.

---

brief, this issue is forfeited. *See Barnes v. FAA*, 865 F.3d 1266, 1271 n.3 (9th Cir. 2017).

[10] *Compare, e.g.*, *Rose*, 562 P.2d at 190 (requiring the plaintiff to prove malice), *with Thompson*, 596 U.S. at 44 n.3 (reserving the question of whether a plaintiff must show malice as part of a federal malicious-prosecution claim); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 183 (2022) ("Within wide constitutional bounds, States are free to structure themselves as they wish.").